E. B. Thompson v. T. H. Jackson, *et al.*, Appellants.

**Justice of the Peace: Jurisdiction.** A justice has no jurisdiction to enter judgment against one who does not live in the township where the action is brought and is not served in it, at the suit of a non-resident of Iowa.

Same: damages. A justice is not liable in damages because he enters up a judgment, void for want of jurisdiction, in good faith.

Same. And a constable is protected in levying execution on such judgment, unless the levy is willfully excessive or oppressive.

**Practice on Appeal:** amount in controversy. When malice is charged and the prayer is for actual and punitive damages aggregating more than one hundred dollars, an appeal lies without certificate.

*Appeal from Palo Alto District Court.*—HON. GEORGE
H. CARR, Judge.

TUESDAY, JANUARY 22, 1895.

This is an action at law to recover damages for certain alleged wrongful acts of the defendants. There was a trial by jury. Verdict and judgment for the plaintiff. Defendants appeal.—*Reversed.*

*C. E. Cohoon* and *B. E. Kelly* for appellants.

*Soper, Allen & Morling* for appellee.

Rothrock, J.—I. The defendant T. H. Jackson was a justice of the peace, and C. B. Jackson was a special constable. A judgment for two dollars and seventy-five cents and costs was entered on the docket of said justice against E. B. Thompson, plaintiff herein, and in favor of one Nolan. Execution was issued on the judgment, and it was served by C. B. Jackson, as special constable, by levying upon and selling certain hay in stack, the property of the defendant in execution. This action was brought to recover damages of the defendants, on the ground that the judgment was void for want of jurisdiction to render the same. It is averred in the petition that the hay levied upon was of the value of forty-four dollars, and that the "levy and sale were excessive." It is also charged in the petition "that said defendants acted in the premises in willful excess and abuse of their authority and of the process of the law, and fraudulently and maliciously and with oppression, and they conspired together in the premises to oppress this plaintiff, and defraud him, and to do damage aforesaid; that the defendants have in their possession the documents, papers, and judgment entry

hereinbefore referred to, and the plaintiff is unable to set out copies thereof; wherefore the plaintiff demands judgment against the defendants for forty-four dollars, actual damages, and fifty dollars, exemplary damages, and costs." The judgment on the verdict against T. H. Jackson was for forty-six dollars and fifty-two cents, and against C. B. Jackson for ten dollars.

The first question presented goes to the jurisdiction of this court to entertain the appeal. It is claimed by appellee that the amount in controversy, as shown by the pleadings, does not exceed one hundred dollars, and that, as the trial judge did not certify questions for the determination of this court, the appeal should be dismissed. We have set forth part of the petition to show that the plaintiff claimed exemplary damages under proper averments, and demanded forty-four dollars actual damages, and fifty dollars exemplary damages. And the petition was afterwards amended by striking from the demand for judgment the sums of forty-four dollars and fifty dollars, and inserting in lieu thereof the sum of forty-nine dollars and one hundred and fifty dollars, respectively. So that, when the case was tried, the plaintiff demanded judgment for one hundred and ninety-nine dollars. The petition was not at any time before or after verdict amended by reducing the amount claimed. The thought of counsel for appellee is that the amount in controversy did not exceed one hundred dollars because the recovery of exemplary damages is not a matter of right, but that the amount thereof is left to the discretion of the jury. The defendants denied the averments of the petition charging them with malice and oppression and the cause was submitted upon pleadings which authorized a judgment for plaintiff for more than one hundred dollars. It is true it is not the amount named in the prayer of a petition that determines the amount

in controversy; that question is settled by the body or charging part of the pleading.  *Cooper v. Dillon,* 56 Iowa, 368, 9 N. W. Rep. 302.  If by the pleadings, and consistently therewith, a judgment might have been recovered for more than one hundred dollars, the case is appealable, with the certificate required by section is appealable, without the certificate required by section 3173 of the Code.  *Ormsby v. Nolan,* 69 Iowa, 130, 28 N. W. Rep. 569; *Madison v. Spitsnogle,* 58 Iowa, 369, 12 N. W. Rep. 317.  There is no doubt that the defendants. had the right to appeal the case.

II.  It appears from the record that the defendant T. H. Jackson was a country justice of the peace in Lost Island township, Palo Alto county.  P. J. Nolan formerly lived in that vicinity, and removed to the state of Montana.  He left some verified accounts with said justice of the peace for collection, among which was an account against E. B. Thompson, who resided in said township.  He removed across the line of said township into Highland township, in the same county, in November, 1892.  Shortly after his removal, Jackson issued an original notice on said account, and delivered it to a constable, and it was served on Thompson in Highland township.  The justice made up his docket in proper form, and it shows affirmatively that the original notice was served in Highland township.  Thompson made no appearance on the return day, and, as appears by the docket entry, the justice found that he was served with the notice "in the manner required by law in Highland township," and entered a judgment against him on the tenth day of December, 1892.  Thompson gave no attention to the matter; and, on the twenty-fourth day of the same month, execution was issued, a levy was made, and the property was afterward sold.

The principal question arises upon the claim that Jackson had no jurisdiction to enter the judgment, and, because of the want of jurisdiction, he and the special constable are liable in damages for executing the judgment.     Counsel for appellants contend that the justice had jurisdiction, or, rather, that the question of jurisdiction cannot be raised in a collateral proceeding.     We think this position is not well taken.     The statute defining the territorial jurisdiction of justices of the peace is not as explicit as it might be made.     Section 3507 of the Code provides, in a general way, that the jurisdiction is coextensive with the county unless specifically restricted.     Section 3509 is as follows:   "Suits may in all cases be brought in the township where the plaintiff or defendant, or one of several defendants, resides."     Section 3510 provides that suits "may also be brought in any other township of the same county if actual service on one or more of the defendants is made in such township."     The plaintiff in the action was a nonresident of the county, and Thompson was not served with the original notice in the township where the suit was brought, and no jurisdiction was acquired by the service.     *Auspach v. Ferguson,* 71 Iowa, 144, 32 N. W. Rep. 249.     This question was determined by the justice, and he decided that he had jurisdiction of Thompson.

The District Court instructed the jury upon this question as follows:   "As to the defendant T. H. Jackson, you are told that, in the judgment of the court, it appears from the undisputed facts that the said Jackson had no jurisdiction of the person of the defendant in the action wherein P. J. Nolan was plaintiff, and the plaintiff, E. B. Thompson, was defendant; and that he had no jurisdiction to render the judgment of December 10, 1892, against the plaintiff in this case, and that in rendering the said judgment and in issuing

an execution thereon, and in delivering the same to the officer, with instruction to levy the same, the said defendant acted without warrant or authority of law, and is liable to the plaintiff herein for such damages as he has sustained.   It appears from the uncontroverted testimony that, under the execution in question, a certain quantity of hay belonging to the plaintiff was levied upon and sold and converted by the purchaser, and the measure of the plaintiff's recovery would be the fair, reasonable market value of the said hay, as it was at the time and place levied upon, with interest on such sum at six per cent. per annum to date; and this will be the limit of plaintiff's recovery, unless you find that the defendant acted maliciously.   As to the defendant T. H. Jackson, therefore, your verdict will be for the plaintiff, and against him, in such sum, at least; as will compensate the plaintiff for the loss of the hay levied upon under the rule hereinbefore given you; and, if you find that the defendant T. H. Jackson acted maliciously, then, in addition, you may allow the plaintiff exemplary damages in such amount as, in your best judgment, he ought to recover, not to exceed the amount claimed in the petition.   As to the defendant C. B. Jackson, you are told that the execution delivered to him, and under which he made levy upon the property of the plaintiff, is regular in form, and upon its face appears to be a valid writ.   The defendant C. B. Jackson was therefore justified in proceeding to execute the said writ, and in levying upon and selling the hay in controversy, unless he knew or had knowledge of such facts as would put him upon inquiry, which inquiry, if prosecuted with reasonable diligence, would have disclosed the fact that the judgment upon which the said execution was issued was void for want of jurisdiction of the justice rendering the same." Under these instructions the jury were required to find a verdict against the defendant T. H.

Jackson in some amount; and the right of recovery for actual damages is founded upon the theory that he is absolutely liable in damages even if he acted in good faith, believing that he had jurisdiction.

It is a well-established general rule that judges of superior courts and courts of general jurisdiction, when acting within the scope of their jurisdiction, are not liable, however erroneous or wrongful their acts may be. *Bradley v. Fisher*, 13 Wall. 335; Cooley, Torts, pp. 472-474; Bishop, Noncontract Law, sections 781-784. And, if a judge of such court should mistakenly decide that the service or writ by which the defendant is sought to be brought into court was such as to give jurisdiction of the defendant, there is no reason why he should not be protected from an action for damages, as well as when he decides any other question in a case erroneously. To illustrate: Suppose a judge of one of our District Courts should have the question presented whether an original notice was properly served, and should decide that the service was good, and it should afterward be adjudged that it was so defective that it was no service; under all the decisions and views of text writers, an action for damages would not lie against him. We have probably discussed these fundamental rules sufficiently for the purpose of this case.

III. A distinction is sought to be made between the liability of a judge of a court of general jurisdiction and a justice of the peace. It is stated thus in Cooley on Torts (section 419): "It is universally conceded that, when inferior courts or judicial officers act without their jurisdiction, the law can give them no protection. The rule has been held otherwise, however, in cases of judges of superior courts where the error has consisted in exceeding their authority." In section 420 the reason of the distinction is stated thus: "Why the law should protect the one judge, and not the other, and

why, if it protects one only, it should be the very one
who, from his higher position and presumed superior
learning and ability, ought to be most free from error,
are questions of which the following may be suggested
as the solution:    The inferior judicial officer is not
excused for exceeding his jurisdiction because, a lim-
ited authority only having been conferred upon him, he
best observes the spirit of the law by solving all ques-
tions of doubt against his jurisdiction.    If he errs in
this direction, no harm is done, because he can always
be set right by the court having appellate authority
over him, and he can have no occasion to take hazards
so long as his decision is subject to review.    The rule
of law which compels him to keep within his jurisdic-
tion at his peril cannot be unjust to him, because, by
declining to exercise any questionable authority, he
can always keep within safe bounds, and will violate
no duty in doing so.    Moreover, in doing so he keeps
within the presumptions of law, for these are always
against the rightfulness of any authority in an inferior
court which, under the law, appears doubtful.    On the
other hand, when a grant of general jurisdiction is
made, a presumption accompanies it that it is to be
exercised generally, until an exception appears which
is clearly beyond its intent.    Its very nature is such as
to confer upon the officer intrusted with it more liberty
of action in deciding upon his powers than could arise
from a grant expressly confined within narrow limits,
and the law would be inconsistent with itself if it were
not to protect him in the exercise of this judgment.
Moreover, for him to decline to exercise an authority
because of the existence of a question when his own
judgment favored it, would be to that extent to decline
the performance of duty, and measurably to defeat the
purpose of the law creating his office; for it cannot be
supposed that this contemplated that the judge should

act officially as though all presumptions opposed his authority, when the fact was directly the contrary." We have set out this extended extract because it embodies all of the reasons given by the various courts which have promulgated the doctrine. It will be observed that the distinguished author, by his opening statement in the quotation, makes a most pertinent suggestion as to why the rule should have been adopted.     After an exhaustive examination of the cases which make this distinction, we have to say that we do not think that they are founded upon grounds which can be sustained by any logical or reasonable argument. In the case of *Henke v. McCord,* 55 Iowa, 378, 7 N. W. Rep. 623, it was held that a justice of the peace who enforced an ordinance which is void for want of power in the city to enact it cannot be held liable therefor in a civil action.     The general rule as stated in Cooley on Torts is referred to, and the following language was used in reference thereto: "Whether a rule is just which affords immunity to the judge of a Superior Court, who, from his position and presumed learning, ought to be most free from error, whilst it holds an inferior judicial officer liable, we need not now determine." The case of *Brooks v. Mangan,* 86 Mich. 576, 49 N. W. Rep. 633, involves the same question as to the liability of a justice of the peace for enforcing a void city ordinance.     The court said: "It is conceded that circuit judges cannot be held liable in a civil action for any judicial determination although such determination results in depriving the citizen temporarily of his liberty.    Circuit judges are usually men of experience and education in the law, while justices of the peace seldom have any legal education or training. Upon what reason should the former be held exempt from liability for their errors, while the latter must be severely punished for honest errors of judgment? I

can find no reason in such a distinction." In Bishop, Noncontract Law, section 783, it is said: "Most of the cases exhibit an inclination to be specially severe on justices of the peace and other inferior magistrates, compelling them, in distinction from the rule as to the superior judges, to respond in damages whenever their judicial act was without jurisdiction. But, in reason, if judges properly expected to be the most learned can plead official exemption for their blunderings in the law, *a fortiori* those from whom less is to be expected, and who receive less pay, should not be compelled to respond in damages to their mistakes honestly made, after due carefulness." We might cite many other protests and criticisms by courts and text writers condemning the rule, but it is not necessary to do so. The current of legal thought is that the distinction is unreasonable, unjust, illogical, and ought not to obtain.

It is to be remembered that this case is founded on the want of jurisdiction in the justice of the peace, and an excessive levy on property by the constable. There are averments in the petition in aggravation of the alleged wrong, as that the acts were malicious and without cause, and vindictive damages are claimed. The instructions we have set out above ignore all these considerations, and hold the justice of the peace liable because his judgment was void; and the jury were further instructed that the constable was liable if he knew or had knowledge of such facts as would put him on inquiry, which inquiry, if prosecuted with reasonable diligence, would have disclosed the fact that the judgment was void for want of jurisdiction, and that he was also liable if he made an excessive levy on property. It must be remembered that we are discussing the question of liability for judicial acts only. A justice of the peace is both a judicial and ministerial officer. For his wrongful ministerial acts he

is liable the same as any other ministerial officer. This is the effect of the decisions in the cases of *Lanpher v. Dewell*, 56 Iowa, 153, 9 N. W. Rep. 101, and *Horne v. Pudil*, 88 Iowa, 533, 55 N. W. Rep. 485.

Some question is made as to whether any of the assignments of error apply to both of the defendants. We discover no ground for this objection. If, as we have found, the justice of the peace was not liable for rendering the judgment, the constable was also protected by the judgment for all his acts, unless for a willfully excessive levy and sale of property, with intent to oppress the defendant in execution. *Henke v. McCord* and *Brooks v. Mangan, supra.*

For the error in the instructions above discussed, the judgment of the District Court is *reversed.*