# PETER LANDSEIDEL, Respondent, v. R. CULEMAN, Fred Schwenk and Peter Jungers, Appellants.

### (13 A. L. R. 1339, 181 N. W. 593.)

**False imprisonment — justice of peace immune from liability for judicial acts in issuing warrant of arrest.**

The plaintiff was arrested by a deputy sheriff under a warrant issued by a justice of the peace. The warrant purports to have been issued pursuant to a complaint of one Schwenk, a creditor of the plaintiff, charging that the defendant (the plaintiff herein) used a fraudulent and false device to cheat the complainant. The plaintiff was taken before the justice of the peace, and was later remitted to the custody of the officer who locked him in jail. In an action for damages for the arrest, it is *held:*

1. A justice of the peace, in the exercise of his judicial functions, is immune from personal liability for the correctness of his decisions and acts to the same extent as judges of courts of general jurisdiction.

**False imprisonment — justice of peace not liable for issuing warrant of arrest though acting maliciously or without belief in guilt.**

2. A justice of the peace, acting judicially, and within his jurisdiction, is not personally liable for damages resulting from the arrest and confinement of an individual in jail, though it might appear that he had acted maliciously and without a belief that the person had committed a criminal offense.

**Appeal and error — judgment for punitive damages reversed as to all defendants when one not liable.**

3. Where two or more defendants are sued jointly for damages arising out of malicious trespass against the person of the plaintiff, and, from the evidence and the issuable facts as found by the jury in a special verdict, it appears that one of the defendants is not liable, the award of punitive damages cannot stand as to the codefendants.

Opinion filed January 28, 1921. Rehearing denied February 21, 1921.

Appeal from order denying new trial, District Court, Morton County, *Crawford, J.*

Reversed.

*Jacobsen & Murray,* for appellants.

NOTE.—On liability of judicial officer to civil action for acts of judicial nature, see note in 44 L.R.A. (N.S.) 164.

On the question of application of rule of civil liability of judicial officer for false imprisonment, to judges of inferior court, see note in 13 A.L.R. 1344.

It is very apparent that the complaint charges false imprisonment only. 26 Cyc. 72.

"It is essential that the complaint must contain a substantial, accurate, and complete description of the original proceeding, and it must set forth facts showing that it was judicial in character; in criminal cases the particular offense must be stated. Process issued must be adequately described." 26 Cyc. 8.

"The essential foundation of an action for malicious prosecution is an original proceeding, judicial in character." Burns v. Ebern, 26 How. Pr. 273.

"Complaint, in action for malicious prosecution, failing to allege commencement of original proceeding or bona fide termination in favor of the instant plaintiff, was insufficient." 26 Cyc. 74.

"An action for false imprisonment does not lie for an imprisonment in due course on regular proceedings of a court having jurisdiction of the offense. If the order or process be valid, the person wrongfully detained must seek his remedy in some other form of action." 19 Cyc. 339.

"Valid judicial authority existing at the time of the detention is a full justification for proper conduct thereunder." 19 Cyc. 340.

Where a justice of peace has jurisdiction over the subject-matter, he is not liable in a civil action for damages, even though he acts corruptly and maliciously. Gordon v. District Ct. (Nev.) 131 Pac. 134; Pratt v. Carter (Mass.) 48 Am. Dec. 652; Cook v. Bangs, 31 Fed. 640; Curnow v. Kessler (Mich.) 67 N. W. 982; Grant v. Williams (Mont.) 169 Pac. 286; Bradley v. Fisher (U. S.) 20 L. ed. 646.

*Sullivan & Sullivan,* for respondents.

Even a regular process is no defense if the imprisonment is made use of to extort money or property from the prisoner. 8 Stand. Enc. Proc. 927; Clark v. Tilton, 74 N. H. 330; 11 R. C. L. pp. 798 and 799.

All persons who directly procure, aid, abet, or assist in an unlawful imprisonment, are liable as principal. And where there is some participation and concert of action on the part of various defendants, they become joint tort-feasors. 19 Cyc. 326; 11 R. C. L. p. 809, ¶ 22.

BIRDZELL, J. This is an appeal from an order denying a motion for a new trial. The action is one to recover damages for illegal imprisonment of the plaintiff Landseidel in the city jail of Hebron, North Dakota, in circumstances presently to be stated. The action was tried before a jury, and a special verdict rendered. Upon this verdict judgment was entered for the plaintiff. Consideration of the errors assigned upon this appeal requires that attention be given to the allegations of the complaint as well as to the evidence adduced at the trial and the special verdict. The complaint is stated in eight paragraphs. All of them except the first relate to the damages. The cause of action is alleged in the first paragraph, which reads as follows: "That on the 17th day of July, 1919, at Hebron, in the county of Morton, state of North Dakota, the defendant Rome Theiring, at the instigation and procurement and request and orders of the defendants Fred Schwenk, R. Culeman, and Peter Jungers, unlawfully and maliciously, and without probable or reasonable cause, and without any cause whatsoever, but solely for the purpose of attempting to extort from this plaintiff a note and mortgage, and with intent to injure the plaintiff, by force compelled the plaintiff to go with him to the city jail of Hebron, North Dakota, and there imprisoned this plaintiff, and then and there detained him and restrained him of his liberty from 11 o'clock on July 17, 1919, to noon on the 18th day of July, 1919, against the will of the plaintiff herein."

Upon the trial the defendants objected to the introduction of any evidence, on the ground that the complaint did not state facts sufficient to constitute a cause of action. The objection was overruled, and testimony was adduced showing that the plaintiff, for a considerable period prior to his arrest, had been indebted to the defendant Schwenk in an amount approximately $87; that there had been some understanding between Schwenk and the plaintiff to the effect that the plaintiff would give Schwenk the exclusive agency for the sale of his government homestead, consisting of 80 acres in Stark county, and that out of the proceeds of such sale Schwenk's claim might be satisfied. It appears that the plaintiff subsequently sold his land and disposed of the proceeds without paying Schwenk's claim. There were some negotiations looking toward a settlement in June, 1919, and as a result the plaintiff agreed to discharge the claim at the rate of $10 per month.

He accordingly paid $10 on June 28th. In the evening of the 17th of July, as the plaintiff and his wife were leaving the dentist's office in Hebron, Theiring, a deputy sheriff, arrested the plaintiff upon a warrant issued by the defendant Culeman, a justice of the peace. The warrant had been issued upon the complaint of Schwenk, charging that on the 29th day of December, 1917, at the city of Hebron in Morton county, the above-named defendant (Landseidel) "did wilfully and unlawfully swindle this plaintiff out of his money by means of a note in writing, and which defendant used as a false and fraudulent device to cheat this complainant," etc.

The warrant was fair on its face, but it does not appear that the complaint had been submitted to the state's attorney as required by § 10,135, Comp. Laws 1913. There is evidence, however, that the state's attorney had talked with the justice of the peace some time previously, and had given him to understand that he might issue warrants in minor cases where he thought a man should be arrested, that it would be all right with him and he would O. K. it. Immediately after the arrest, the plaintiff was taken to the office of the defendant Jungers, an attorney at law, who apparently was representing Schwenk. The defendant Culeman was also there. The plaintiff desired a continuance, owing to the absence from the city of his attorney. After some discussion involving the Schwenk claim, and, as the defendants Jungers and Culeman testified, involving also the unwillingness of the plaintiff herein to give bail in the sum of $50 for his appearance the following day, the plaintiff was taken to the city jail and locked up for the night. On the following morning he was allowed to go home for his breakfast, with the understanding that he would return in about an hour. Upon his return he was again taken to the office of Jungers, where there was some further discussion with reference to the Schwenk claim. Jungers, Schwenk, and Culeman were present and participated in the discussion. It seems that Landseidel was given to understand at the time of both his appearances before the justice of the peace in Junger's office, that if he would pay the Schwenk claim or if he and his wife would join in a mortgage upon their home in Hebron, securing it, the proceedings against him would be dropped. The plaintiff refused to give the mortgage demanded and to give bail, whereupon he was returned to the jail and kept

confined for several hours. An entry in the justice's docket dated July 19, 1919, shows that on July 18th the defendant refused to give any undertaking, and that he was left in charge of the officer. Following this is this statement: "Later, complaining witness dropped the prosecution, and the case was then dismissed, with costs in the sum of $6 against the complaining witness Fred Schwenk."

Upon the trial the action was dismissed as to Theiring, deputy sheriff, who made the arrest, upon the stipulation that the dismissal should not affect the cause of action against the other defendants.

It seems that the complaint upon which the warrant issued was drawn under § 9968, Comp. Laws 1913, which makes it a felony for one person to obtain money or property from another "by color or aid of any false token or writing or other false pretense," etc. There were twenty-one questions submitted to the jury for their special verdict, some of which were not answered.

The questions responded to and the answers are as follows:

Q. Did the defendants, Fred Schwenk, R. Culeman and Peter S. Jungers, jointly, on or about the 17th day of July, 1919, at Hebron, North Dakota, *without probable or reasonable* cause and maliciously and for the purpose of attempting to extort from the plaintiff, Peter Landseidel, money or a note and mortgage, cause Peter Landseidel, the plaintiff, to be arrested and confined in the city jail of Hebron, North Dakota?"

A. Yes.

Q. Did the defendants, Fred Schwenk, R. Culeman, and P. S. Jungers, in instituting and executing the proceedings leading up to the arrest of the plaintiff herein, and in causing the arrest and detention of the plaintiff, Peter Landseidel, if you find such to be the fact, actually and in good faith believe that the plaintiff Peter Landseidel had committed the crime of obtaining property by false pretense or any other crime?

A. No.

Q. If you find that some of them in executing and instituting said proceedings did in fact believe in good faith that Landseidel had committed some crime, you will state which of the defendants in good faith believed that Landseidel had committed a crime.

A. None of them.

Q. If you find that in fact the plaintiff was arrested, did said arrest cause the plaintiff mental suffering?

A. Yes.

Q. If you find that in fact the plaintiff was arrested, did said arrest reasonably cause the plaintiff physical suffering?

A. Yes.

Q. If you find that in fact the plaintiff was arrested, did said arrest reasonably cause the plaintiff to be kept from his work?

A. Yes.

Q. Were all the acts and things that you find were done or caused to be done by the defendants, Fred Schwenk, R. Culeman, and P. S. Jungers, done maliciously, and without reasonable or probable cause therefor?

A. Yes.

Q. Did the defendant Fred Schwenk have probable cause for the arrest of said plaintiff in the criminal proceedings complained of herein?

A. No.

Q. Did the said defendant Fred Schwenk act maliciously against the said plaintiff in having him arrested in the proceedings complained of?

A. Yes.

Q. What damages did the plaintiff suffer? 1st. Actual damages?

A. One thousand dollars.

Q. 2d. Exemplary damages?

A. Three thousand dollars.

It is difficult to ascertain from the complaint whether the plaintiff relies upon a cause of action for malicious prosecution, false arrest, or abuse of process. There was evidence submitted at the trial from which the jury might have found the defendants, or some of them, to have been guilty of one or more of these forms of trespass against the person of the plaintiff. But before a judgment could be legally entered upon the special verdict under this complaint and the evidence, it would have to appear that the jury had found all of the essential facts in issue in favor of the plaintiff; and, to sustain the judgment for punitive damages, the facts must support the liability of all of the defendants. The verdict charges the defendants with punitive damages

in the sum of $3,000, and it cannot be assumed that this verdict would necessarily have been the same if any one of the defendants were not legally answerable for the commission of the wrong for which the punitive damages are assessed. Punitive damages are largely in the discretion of the jury, and they are presumed to be assessed as a measure of punishment for culpable conduct. If any one defendant be not answerable, a joint award of punitive damages against him and his codefendants cannot stand, for there is no way of determining the amount the jury considered as appropriate punishment for his share in the wrongful conduct. See 2 Sutherland, Damages, § 407.

The defendant Culeman was a justice of the peace, and it is undisputed that a complaint was filed with him, a warrant issued thereon, and that the arrest was made under the warrant.

It is elementary that judicial officers are not liable for the erroneous exercise of the judicial powers vested in them. This immunity from liability is based upon considerations of public policy. To hold judicial officers personally liable for errors of judgment concerning either questions of law or fact would be subversive of both independence and efficiency in the administration of justice. This rule of public policy applies as well to inferior courts of limited jurisdiction as to superior courts of general jurisdiction. We can see no reason for the distinction that has sometimes been drawn between the two classes of judicial officers in this respect. On this subject, Ruling Case Law says (11 R. C. L. 15): "In the later cases a clear tendency has been evident to abolish altogether the discrimination between judges of different rank, and to extend to justices of the peace and other lesser judicial officers immunity from personal responsibility for the correctness of their decisions and acts to the same extent that it is granted to judges of the superior courts." If a judge acts within his jurisdiction, it has been held that he is not even liable to a party civilly though he act both maliciously and corruptly. Broom v. Douglass, 44 L.R.A. (N.S.) 164, and note (175 Ala. 268, 57 So. 60, Ann. Cas. 1914C, 1155).

In the instant case the justice cannot be held liable for any mistake he might have made in determining that the complaint was sufficient to authorize the issuance of the warrant. And there is no finding that any subsequent act of his converted the arrest and imprisonment into

a trespass *ab initio*. The only findings that tend in this direction are in substance that Jungers, Schwenk, and Culeman, without probable or reasonable cause, and maliciously, for the purpose of extorting money from the plaintiff, caused him to be arrested and confined; that none of them, in good faith, believed that Landseidel had committed any crime; that all the acts participated in by Culeman were malicious and without reasonable or probable cause. The jury omitted answering the specific question as to whether or not Culeman had acted in good faith in issuing the warrant and in the subsequent proceedings in connection therewith. Obviously if Culeman was acting judicially and within his jurisdiction, his belief as to whether or not Landseidel had committed some crime was immaterial, as it might have been his duty to issue the warrant nevertheless, or at least he might well have conceived it to be his duty. And if he regarded it as his duty to issue a warrant, neither the fact that he acted maliciously nor the absence of probable cause for the arrest, would render him personally liable. Broom v. Douglass, supra; 11 R. C. L. 815. It follows that, as facts sufficient to charge Culeman with liability are not found, the verdict is vitiated in so far as it awards punitive damages.

The court erred in denying defendant's motion for a new trial. The order is reversed and the cause remanded for a new trial. Costs to abide the event.

CHRISTIANSON and BRONSON, JJ., concur.

GRACE, J. I concur in the result.

ROBINSON, Ch. J. (concurring specially). In this case defendants appeal from an order denying a motion for a new trial. The complaint is sufficient. It avers that, to extort money from the plaintiff, the defendants arrested and imprisoned him in the county jail in Hebron, to his damage $10,000. The verdict is for actual damages, $1,000; for exemplary damages, $3,000. The arrest and imprisonment is not denied, but each defendant claims to be perfectly innocent. Culeman, the justice, says he merely acted as a justice of the peace and issued a warrant; Jungers, that he merely acted as an attorney at law; Schwenk, that in making the complaint and in causing the arrest he

acted in good faith on the advice of Mr. Jungers. The warrant on which plaintiff was arrested merely charges him with swindling. The charge of the complaint is as follows:

"Fred Schwenk, being first duly sworn, says: That on the 29th day of December, 1917, at the city of Hebron, in said county, the above-named defendant did wilfully and unlawfully swindle this plaintiff out of his money by means of a note in writing, and which defendant used as a false and fraudulent device to cheat this complainant, against the peace and dignity of the state of North Dakota.

"Wherefore, complainant prays that the said defendant may be arrested and dealt with according to law.

"(Signed) Fred Schwenk."

The complaint does not state facts sufficient to constitute a public offense, and the justice had no right or jurisdiction to issue a warrant. The arrest was made in the nighttime about 10:30 P. M. on July 10, 1919. It was made to force the plaintiff to pay or secure a promissory note for $87 that he had made to Schwenk for money loaned. When arrested the plaintiff was taken to the office of Jungers. Culeman was there and wanted the plaintiff to settle by giving a note and mortgage on his house, or by inducing his uncle to sign a note with him.

Plaintiff testifies: Culeman said he would put me to jail if I did not give the note and mortgage. Plaintiff refused. They put him in jail and he was there over night. Next morning they brought him again before the justice and Jungers.

Plaintiff testifies: Culeman said to him: You got to give a mortgage or get your uncle to sign a note and then you can go.

Q. Well, what did he do?

A. Well, when I say that I would not settle that way he went up from his chair, went with his fist for my face and shook his fist in my face, and he says: "You are a robber." He said: "You are the biggest robber and the biggest lawbreaker in the whole world;" and Jungers said: "You have to settle, that is all there is about it."

Then they said, if you have no money to pay it you got to go to jail till your lawyer comes back, and they put me in jail again. They left me there till noon. Then the deputy sheriff came and opened the lock

and said: "You can go to dinner; you can go to work." That was the end of it.

By a special verdict the jury found that, for the purpose of extorting money from the plaintiff, the defendants jointly caused him to be arrested and confined in the city jail at Hebron, and that none of the defendants believed the plaintiff to be guilty of any offense. That part of the verdict is well sustained by the evidence. The legal procedure was a mere hocus-pocus and a gross abuse of legal process. It was no justification to any party. However, the verdict is clearly excessive. The sum assessed for actual damages was entirely sufficient to include the exemplary damages. Hence, it is ordered that a new trial be granted, with costs to abide the event of the action.

Reversed and remanded forthwith.