Vernon P. HUENDLING, Appellee,

v.

Darlo JENSEN; Walter Davitt d/b/a Denison Super Valu, First National Bank, Denison, Iowa; L. D. Servoss; Western Surety Company, Appellants.

No. 53368.

Supreme Court of Iowa.

June 10, 1969.

William H. Welch, Logan, for L. D. Servoss, appellant.

Wunschel & Schechtman, Carroll, for appellee.

STUART, Justice.

Plaintiff brought this action founded upon false arrest against L. D. Servoss and several other parties. By trial time, the action had been dismissed as to all defendants except Servoss for various reasons not pertinent here. Trial to the court resulted in a judgment against Servoss of $2500. He has appealed and for our purposes here will be considered the only defendant.

Plaintiff's wife paid for groceries purchased at Denison Super Valu by a check drawn on her husband's account in the Breda Savings Bank, Breda, Iowa. She signed both her husband's name and her name to the check.

The manager of the supermarket deposited the check in the First National Bank of Denison, which by mistake sent the check for collection to the Crawford County Savings Bank of Denison. It returned the check to the First National after affixing a yellow slip on which the phrase "wrong bank" was checked.

The First National returned the check to the manager of the supermarket who took it and some other "bad checks" to Servoss, a justice of the peace, in Crawford County. Servoss had collected other checks for the supermarket for a 20 percent commission. In accordance with his customary practice, he had the manager sign a preliminary information charging plaintiff with the crime of false drawing and uttering of a check. He issued a warrant for plaintiff's arrest on this information. Whether the information and warrant originally named plaintiff or his wife is not significant as plaintiff consented to the jurisdiction of his person.

A constable arrested plaintiff, a farmer of substantial means, and brought him to defendant's office. Defendant suggested he plead guilty. A call to the Breda Savings Bank disclosed plaintiff had carried a substantial balance in his checking account at all times. The check would have cleared the bank any time it had been properly presented.

Plaintiff remained in custody about 1¼ hours. The charge was later dismissed by defendant.

Plaintiff offered parts of defendant's discovery deposition into evidence. We quote portions:

"Q. I say in all these checks that you received from the Denison Super Valu that have been returned to them, that is, unpaid, is your first proceedings to get out a preliminary information? A. Yes.

"Q. Do you ever collect from them by writing them a letter? A. No, no, never had any collections other than some checks.

"Q. Well, now, let's be a little more specific. What do you mean by a collection? A. They were checks with insufficient funds that I collected.

"Q. And you collect those? A. Yeah.

"Q. Now, when you collect this money for the check, do you return all of that to the Super Valu? A. Yes.

"Q. Do you receive any commission? A. Yes.

"Q. For collections? A. 20 percent for collecting.

"* * *

"Q. How great a time lapse was there between your conversations with Mr. Jensen at the Denison Super Valu and the issuance of the warrant? A. Well, it would have been done right away, that is, reasonably short length of time. I wasn't going to hold him up.

"* * *

"Q. On these checks that you collected for the Denison Super Valu prior to this one here, did you charge them 20 percent commission? A. Yes.

"Q. And had you collected this one, you would have charged them 20 percent on this— A. I presume so, yes.

"Q. Too? Was this by agreement with them? A. Yes.

"Q. Is this your ordinary charge? A. Yes.

"Q. In addition to this, do you get court costs? A. Yeah, we get half of the court costs.

"* * *

"Q. Now, as I understand it, Mr. Servoss, your usual procedure which you followed in this case was that when somebody called you to collect a check, you prepare the information— A. Yeah.

"Q. And take it down to them, is that correct? A. Yeah.

"Q. And do you advise them to sign this information if they want their money? A. If they want me to do anything with it, they have got to sign the information."

The manager of the supermarket stated Mr. Servoss's procedure was not used by the other justice of peace who also did some collecting for him.

The trial court found defendant "is a justice of the peace who carries on an extensive collection business and who, when it comes to unpaid checks is not averse to using the criminal arm of the law in the furtherance of his collection business" to shield himself and shift the court costs to the county.

The evidence supports these findings and conclusions. Defendant does not claim otherwise.

I. The basic question for our determination is whether a justice of the peace who requires a preliminary information and issues an arrest warrant as part of his regular procedure for collecting bad checks for a 20 percent commission is protected by judicial immunity when there was no probable cause for the issuance of the warrant.

"Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction, as this Court recognized when it adopted the doctrine, in Bradley v. Fisher, 13 Wall. 335, 20 L.Ed. 646 (1872). This immunity applies even when the judge is accused of acting maliciously and corruptly, and it 'is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences'. (Scott v. Stansfield, L.R. 3 Ex. 220, 223 (1868), quoted in Bradley v. Fisher, supra [13 Wall. 349; note, at 350, 20 L.Ed. at 650].) It is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decision-making but to intimidation." Pierson v. Ray, 386 U.S. 547, 553–554, 87 S.Ct. 1213, 1217–1218, 18 L.Ed.2d 288, 294–295 (1967).

Iowa, in common with other jurisdictions extends judicial immunity to courts of limited jurisdiction, including justices of the peace. Thompson v. Jackson, 93 Iowa 376, 382–385, 61 N.W. 1004, 1006–1007, 27 L.R.A. 92; Londegan v. Hammer, 30 Iowa 508, 512; 51 C.J.S. Justices of the Peace, § 19a, p. 45; 31 Am.Jur. 227, Justices of the Peace, § 27; Anno: 173 A.L.R. 802, 806; Anno: 13 A.L.R. 1344, 1348.

"A justice of the peace when acting judicially, and within the sphere of his jurisdiction, is not liable in a civil action for any error he may commit, even though he acts from impure and corrupt motives." Yelton v. Becker, Mo.App., 248 S.W.2d 86, 89. Henke v. McCord, 55 Iowa 378, 384, 7 N.W. 623, 625; Anno: 173 A.L.R. 802, 803; Anno: 13 A.L.R. 1344, 1345.

We must evaluate defendant's action in this case in the light of this generally accepted statement.

■ The cases distinguish judicial acts from ministerial acts. Heath v. Halfhill, 106 Iowa 131, 133, 76 N.W. 522, 523; Thompson v. Jackson, 93 Iowa 376, 385, 61 N.W. 1004, 1007, 27 L.R.A. 92; Gowing v. Gowgill, 12 Iowa 495, 497; Fraley v. Ramey, 239 F.Supp. 993, 995 (D. C.W.Va.1965); Pierce v. Caldwell, 83 Idaho 229, 360 P.2d 992, 994; Yelton v. Becker, Mo.App., 248 S.W.2d 86, 89; Pruitt v. Turner, Tex.Civ.App., 336 S.W.2d 440, 442–443; Anno: 173 A.L.R. 802, 805; Anno: 13 A.L.R. 1344, 1347. Those routine matters which might be performed by a clerk are said to be ministerial. Yelton v. Becker, supra; Pruitt v. Turner, supra; 51 C.J.S. Justices of the Peace § 20, p. 49. Judicial acts are those which call for the exercising of judgment and legal discretion. Yelton v. Becker, supra; Pruitt v. Turner, supra; Rogers v. Marion, 11 Cal. App.2d 750, 54 P.2d 760; 51 C.J.S. Justices of the Peace § 19 c, p. 47. Defendant here issued a warrant for plaintiff's arrest upon a preliminary information. The justice of peace must determine whether there was probable cause for the issuance of the warrant. This is a judicial act. Fraley v. Ramey, 239 F.Supp. 993, 994 (D.C.W.Va. 1965); Yelton v. Becker, supra; Rogers v. Marion, supra; 51 C.J.S. Justices of the Peace § 19c, p. 47.

■ A justice of the peace is acting within the sphere of his jurisdiction if: (1) the statutory prerequisites to jurisdiction are fulfilled; Lanpher v. Dewell, 56 Iowa 153, 155–157, 9 N.W. 101, 102–103; Williams v. Kozak, 280 F. 373, 374 (4th Cir.1922); Rock v. Antoine's, Inc., Del., 197 A.2d 737, 741; Waters v. Ray, Fla. App., 167 So.2d 326, 329–330; Duncan v. Brothers, Ky., 344 S.W.2d 398, 399–400; Utley v. City of Independence, 240 Or. 384, 402 P.2d 91, 93; Anno: 173 A.L.R. 802, 811; Anno: 13 A.L.R. 1344, 1360;

(2) he has jurisdiction of the subject matter; and (3) the person. Fraley v. Ramey, 239 F.Supp. 993, 996; Pierce v. Caldwell, 83 Idaho 229, 360 P.2d 992, 994; Williamson v. Waugh, D.C., 160 F.Supp. 72, 76; Duncan v. Brothers, supra; Anno: 173 A.L.R. 802, 803; Anno: 13 A.L.R. 1344, 1345.

■ He is immune even though he exceeds his jurisdiction. McGrew v. Holmes, 145 Iowa 540, 542, 124 N.W. 195, 196; Henke v. McCord, 55 Iowa 378, 384–386, 7 N.W. 623, 625–626; Pierce v. Caldwell, supra; Holland v. Lutz, 194 Kan. 712, 401 P.2d 1015, 1019; Shaw v. Moon, 117 Or. 558, 245 P. 318, 45 A.L.R. 600, 603; Anno: 173 A.L.R. 802, 810; Anno: 13 A.L.R. 1344, 1355.

Civil liability attaches only when he acts wholly without jurisdiction. Williams v. Kozak, supra; Rasmus v. Schaffer, 230 Ala. 245, 160 So. 244, 246; Waters v. Ray, supra; Holland v. Lutz, supra, 401 P.2d at 1020; Cox v. Perkins, 299 Ky. 470, 185 S. W.2d 954, 173 A.L.R. 797, 801; Henry v. Albert, 268 Minn. 316, 129 N.W.2d 317, 319; Hoppe v. Klapperich, 224 Minn. 224, 235, 28 N.W.2d 780, 788, 173 A.L.R. 819, 832; Edwards v. Wiley, 70 N.M. 400, 374 P.2d 284, 285; Vickrey v. Dunivan, 59 N. M. 90, 279 P.2d 853, 855; Shaw v. Moon, supra; Anno: 173 A.L.R. 802, 808; Anno: 13 A.L.R. 1344, 1351.

■ In this case, a preliminary information, proper on its face was executed by the store manager as required by Chapter 754, Code of Iowa. A justice of the peace has authority to hear preliminary informations and issue warrants. Section 748.1, 748.2, Code of Iowa. The question of jurisdiction of the person was eliminated when plaintiff submitted voluntarily to the jurisdiction of the court. Defendant would appear to be immune from civil suit under the general rule.

Plaintiff does not disagree with the general rule but argues this case taken in its

total perspective is such that it should be considered an exception to the rule of judicial immunity. The two factors claimed to support this reuult are the obvious lack of probable cause for the issuance of a warrant for plaintiff's arrest and the use of the criminal process to aid in collecting a civil debt.

The manager and the justice of peace should have realized there was no probable cause for the issuance of this warrant. The check and the attached return slip show the check was sent to the wrong bank for collection. It was not returned for insufficient funds or no account. However, the cases are clear that lack of probable cause does not subject a justice of peace to civil liability. Fraley v. Ramey, 239 F.Supp. 993, 995 (D.C.W.Va. 1965); Rogers v. Marion, 11 Cal.App.2d 750, 54 P.2d 760; Shaw v. Moon, 117 Or. 558, 245 P. 318, 45 A.L.R. 600, 603; Anno: 173 A.L.R. 802, 817; Anno: 13 A.L.R. 1344, 1351. A magistrate's decision to issue a warrant for arrest should not be subjected to the possible influence of the threat of civil liability. It is essential that he be immune from liability for a good faith error in judgment which appears in retrospect to have been patently wrong.

Although the warrant may have been issued in the belief the check was not good, the practice of issuing warrants for arrest in the collection of "bad checks" is highly improper and is a corrupt and flagrant misuse of the powers of defendant's office. Should judicial immunity apply in the face of a charge of malice and corruption? The early Iowa cases left this question in doubt, Henke v. McCord, 55 Iowa 378, 384, 7 N.W. 623, 625; Londegan v. Hammer, 30 Iowa 508, 512; Gowing v. Gowgill, 12 Iowa 495, 498; but Iowa now recognizes the generally accepted rule is that the motives for the action are not determinative. Thompson v. Jackson, · 93 Iowa 376, 382, 61 N.W. 1004, 1006; Pier-

son v. Ray, 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288, 294; Bradley v. Fisher, 13 Wall. 335, 20 L.Ed. 646; Gregoire v. Biddle, 177 F.2d 579, 580–581 (2d Cir.1949); Yaselli v. Goff, 12 F.2d 396, 56 A.L.R. 1239, 1246 (2 Cir.); Fraley v. Ramey, supra; Williamson v. Waugh, 160 F. Supp. 72, 76 (D.C.S.D.W.Va.1958); Rogers v. Marion, supra; Edwards v. Wiley, 70 N.M. 400, 374 P.2d 284, 286 (1962); Tedford v. McWhorter, Tex.Civ.App., 373 S.W.2d 832, 836 (on rehearing 1964); Anno: 173 A.L.R. 802, 816; Anno: 13 A.L.R. 1344, 1365.

The few cases we have found in which a judge used his criminal authority to aid in collecting a civil obligation have uniformly applied the rule of judicial immunity.

In Berry v. Smith, 148 Va. 424, 139 S.E. 252, 55 A.L.R. 279, 280–281 (1927), plaintiff brought action against the justice of peace who issued a warrant for his arrest charging there was an agreement between justice of peace and the merchants that he was to collect a claim by criminal warrant; the warrant was issued because he would get more fees; and he knew there was no criminal liability. The court held a demurrer should have been sustained stating the rule of judicial immunity.

In Landseidel v. Culeman, 47 N.D. 275, 181 N.W. 593, 595, 13 A.L.R. 1339, 1343, the jury by special verdict found justice of peace who issued the arrest warrant acted with others without probable cause and with malice in arresting plaintiff to extort money from him. The court said: "Obviously, if Culeman was acting judicially, and within his jurisdiction, his belief as to whether or not Landseidel had committed some crime was immaterial, as it might have been his duty to issue the warrant nevertheless, or at least he might well have conceived it to be his duty. And if he regarded it as his duty to issue a warrant, neither the fact that he acted maliciously nor the absence of probable cause for the arrest would render him personally liable."

In Curnow v. Kessler, 110 Mich. 10, 67 N.W. 982, in action against justice of peace for issuing a warrant for his arrest, plaintiff alleged he acted maliciously "with a view to assisting the complaining witness to collect a civil demand of the plaintiff." The Michigan court said:

"The justice having obtained jurisdiction of the subject-matter, the rule is well settled that no action can be sustained against him for the recovery of damages by one claiming to have been injuriously affected by his judicial action. It is indispensable to the administration of justice that a judge or other judicial officer, who acts within the scope of his jurisdiction, may act freely, without any fear of being held responsible in a civil action, or having his motives brought in question by one injuriously affected by his judgments. This immunity is uniformly held not to be affected by the motives with which it is alleged that the judicial officer has performed his duty. If the officer be in fact corrupt, the public has its remedy, but the defeated suitor cannot be permitted to obtain redress against the judge by alleging that the judgment against him was the result of corrupt or malicious motives."

 Corrupt officials may be removed by impeachment or subjected to criminal prosecution, but it is generally agreed it is essential to the independence of the judicial process that judges should not operate under the threat of a possible suit questioning the motives for their decisions. Their mistakes can be corrected on appeal.

The evidence here so clearly exposes defendant's improper motives that the doctrine of judicial immunity seems unfair. The difficulty is that equally strong allegations could be made which would force a judge to defend his actions when there was little or no basis for such accusations in fact.

The strongest allegations of flagrant misconduct were of no avail to plaintiff in

Fraley v. Ramey, 239 F.Supp. 993, 996 (D. C. W.Va.1965). Plaintiff alleged "the issuance of the warrant and his subsequent arrest and incarceration were the result of a conspiracy on the part of the justice and the two constables to prevent him from exercising his rights to vote and to serve as an election official in said election * * *". The court said: "* * * since the justice in this case, in the issuance of the warrant, did have jurisdiction of the subject-matter (the crime of rape) and of the person (Fraley, the accused), her act in issuing the warrant was a judicial one for which she has judicial immunity from civil liability, however wrongful her motives might have been, and however injurious in its consequences it may have proved to Fraley."

In Bradley v. Fisher, 13 Wall. 335, 347, 80 U.S. 335, 347, 20 L.Ed. 646, the Supreme Court expressed the reason for the rule as follows:

"For it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself. Liability to answer to everyone who might feel himself aggrieved by the action of the judge, would be inconsistent with the possession of this freedom, and would destroy that independence without which no judiciary can be either respectable or useful." 13 Wall. at page 347, 80 U.S. at page 347.

The logic of this position appears to be generally accepted as there is no attack on the doctrine of judicial immunity by the legal scholars at this time when most other immunities are being severely criticized.

 We are compelled to reverse the trial court. This result should not be interpreted as approval of defendant's practice. We strongly condemn the use of criminal process to collect a civil obligation

and a judge of any court who engages in such practice is not worthy of his office.

Reversed.

LARSON, MOORE, MASON and Le-GRAND, JJ., concur.

GARFIELD, C. J., concurs specially.

RAWLINGS, SNELL and BECKER, JJ., dissent.

GARFIELD, C. J., concurs and would add that this case serves as a graphic example of the injustice which can result from the use of untrained persons in a judicial capacity in our independent minor courts.

RAWLINGS, Justice (dissenting).

I respectfully dissent.

Briefly stated I can neither accept the majority's statement to the effect we have heretofore adopted a position with regard to civil liability of a justice of the peace for malicious or corrupt conduct, nor agree with the rule the majority here finally adopts.

At the outset I disagree with the conclusion stated by the majority as follows: "Should judicial immunity apply in the face of a charge of malice and corruption? The early Iowa cases left this question in doubt, Henke v. McCord, 55 Iowa 378, 384, 7 N.W. 623, 625; Londegan v. Hammer, 30 Iowa 508, 512; Gowing v. Gowgill, 12 Iowa 495, 498; *but Iowa now recognizes the generally accepted rule is that the motives for the action are not determinative.* Thompson v. Jackson, 93 Iowa 376, 382, 61 N.W. 1004, 1006 [1895] * * *." (Emphasis supplied).

It is not to me so apparent the Thompson case, supra, actually settled the issue at hand in this state. In that regard I refer to McGrew v. Holmes, 145 Iowa 540, 543, 124 N.W. 195, 196 [1910], where this court stated: "It seems to be the better opinion, also, that liability does not exist even where the judicial act is malicious or corrupt. *But our own cases are not in entire harmony on that subject, and we do not find it necessary to determine the question here.*" (Emphasis supplied).

It must be conceded other jurisdictions lend substantial support to the rule here finalized by the majority. On the other hand that alone is not determinative, it being for us to here resolve and prescribe the rule to be applied in Iowa.

To that end I would adhere to the view expressed in Gowing v. Gowgill, 12 Iowa 495, 498 [1861], where we said: "We understand the rule to be, that *where an officer acting in a judicial capacity errs in his judgment, he is not liable, but where he acts through favor, fraud or partiality, or knowingly commits a wrong by virtue of his office, he is liable.* In the case of The State on the relation of Conolly [Conley] v. Flinn, 3 Blackford [Ind.] 72, it being an action upon the bond of a justice of the peace, in which the justice was charged with illegal, oppressive conduct, the court say, 'for a judicial act within the jurisdiction of a justice, though he should act erroneously or illegally, he is not liable, unless he acts from impure or corrupt motives. *Where,* however, *he acts corruptly liability attaches.'*

"The conditions of the bond are such as will make the sureties liable for such conduct. The bondsmen expressly agree that their principal shall act without fear, favor, fraud or oppression; and where he does so act, it is in direct violation of the conditions of his bond. The petition in this case distinctly charges the defendant with favor, fraud and oppression. This charge is admitted by the demurrer. If a justice of the peace is permitted so to act, and such conduct is tolerated by law, it brings the judicial department into merited odium and contempt." (Emphasis supplied). See also Horne v. Pudil, 88 Iowa 533, 55 N.W. 485, and Lanpher v. Dewell, 56 Iowa 153, 9 N.W. 101.

Furthermore, that concept has been espoused by the Illinois courts since 1859. See Garfield v. Douglass, 22 Ill. 100; Grossman v. Davis, 117 Ill.App. 354; and Stift v. Lynch (7 Cir.), 267 F.2d 237, 240.

In what is apparently the most recent case in that jurisdiction, People for Use of Jones v. Leviton, 327 Ill.App. 309, 64 N.E. 2d 195, 199, the court says in substantial part: "While the law is settled that a Justice of the Peace is not liable for damages for any error or irregularity in the performance of his duties within the scope of his jurisdiction, it is also the law in this state that a Justice of the Peace, even though he is acting within the scope of his jurisdiction, can be made to answer civilly or criminally if he has acted maliciously and corruptly in the performance of his duties or has falsified his record."

Trial court found, and the majority admits, defendant in the instant case acted maliciously or corruptly in attempting to secure payment of the subject check and thereby obtain benefit of a 20 percent collection commission in addition to any fee he was lawfully entitled to receive. See sections 601.128–601.131, Code, 1966.

Under these circumstances it is to me evident defendant here adopted a dual position in that he, as a justice of the peace, acting officially in a criminal case, also assumed the extraneous role of a private bill collector, using the former as a club to enhance the latter. Stated otherwise, defendant purposely attempted to fasten coloration of his public office to purely personal remunerative activities.

It is to me apparent any cloak of official immunity enjoyed by defendant as a justice of the peace should not be so extended as to insulate him from civil liability for such extra-curricular corrupt activities as are disclosed in the case at bar. Furthermore, I contend the rule of stare decisis does not demand adoption of the majority view.

On the immunity issue I would affirm.

SNELL and BECKER, JJ., join in this dissent.