Bumpus v. Fisher.

JAMES BUMPUS V. JACOB FISHER AND ANOTHER.

A white person may be indicted for an assault and battery upon a slave under the general provisions of the Criminal Law ; the Act relating to the " cruel treatment of slaves" more appropriately applies to injuries committed by some one having control of the slave.

Justices of the Peace have jurisdiction to hear and determine cases of assault and battery committed within their counties, when no deadly weapon is used or attempted to be used.

Where a person was tried and convicted by a Justice of the Peace for laying violent hands on and unmercifully whipping and abusing a slave, and it appeared that the fine was within the jurisdiction of the Justice, that the charge had no technical reference or pertenency to the Act relating to the " cruel treatment of slaves," not following the words of the Statute or showing that the party accused had any control over the slave ; that no objection was made or question raised, on the trial before the Justice, in relation to jurisdiction or to the particular Statute under which the accused was charged, and the entry of conviction containing nothing repugnant to, or inconsistent with jurisdiction in the Justice, it will be presumed, in the absence of other evidence, that he had jurisdiction of the case tried, rather than that he had not.

In such case, even if the facts proven amounted to cruel treatment and would have authorized an indictment for that offence, no malice or corruption being shown, the Justice would not be liable ; for that would have been a mistake of judgment while acting in a judicial capacity.

See this case in relation to the general powers and responsibilities of Justices of the Peace.

Appeal from Upshur. Tried below before Hon. C. A. Frazer.

The material facts are stated in the Opinion.

*W. P. Clark* and *Chilton & Warren*, for appellant.

*P. Murrah* and *J. L. Camp*, for appellee, cited Nix v. The State, 13 Tex. R. 575.

Vol. XXI. 37

ROBERTS, J.   This is an action of malicious trespass and false imprisonment, brought by appellant against appellees.

Appellees pleaded that Dupree was a Justice of the Peace, in Upshur county; that Fisher made an affidavit before him, containing a charge against said Bumpus, that "he did on the 13th Sept'r, A. D. 1856, lay violent hands on a negro slave, Alfred, a man, and unmercifully whip and abuse said boy;" that a warrant was issued by said Justice on said charge, by which Bumpus was arrested and brought before him, and arraigned for trial; that Bumpus having demanded a jury, they brought in a verdict finding him guilty of the charge, and assessing his fine at forty dollars, which was made the judgment of the Court, whereupon said plaintiff was ordered into the custody of the Constable until said fine and the costs were paid, and that if he paid any such fine and costs, as charged in the petition, it was done in satisfaction of said judgment.   The exceptions of plaintiff to this answer of defendants were overruled, and the jury having found a verdict for defendants, and plaintiff having moved for a new trial, and given notice of appeal, it was agreed that the facts submitted to the jury on the trial were in conformity to the said plea.

It has been decided by this Court that a white person may be indicted for an assault and battery upon a slave, under the general provisions of the Criminal Law; and that the Act relating to " Cruel Treatment " of Slaves more appropriately applies to injuries committed by some one who has the control of the slave, and does not prevent the operation of the general law of assault and battery, in its application to a person inflicting an injury on a slave, who has no such control. (Nix v. The State, 13 Tex. R. 575.)   The Statute expressly confers on Justices of the Peace jurisdiction to hear and determine cases of assault and battery, committed within their counties, where no deadly weapon was used or attempted to be used.   (Hart. Dig. Art. 1712.)   If the charge upon which plaintiff was tried, was simple assault and battery, the Justice

clearly had jurisdiction, and the facts showing no malice, he would clearly not be liable.

On the other hand, if the charge was under the Act which makes it indictable in the District Court to "cruelly or unreasonably treat or abuse a slave," (Hart. Dig. Art. 2587,) the Justice would not have jurisdiction to hear and determine, by final trial, but only to inquire and bind over to the District Court for trial there. (Hart. Dig. Art. 1704.)

Under neither view of the case can Fisher be liable, for he had a right to make the complaint under oath, under either law ; and it does not appear that he did anything further. So too the Justice, under either view, was not liable for issuing the warrant of arrest, for he had power either to try or bind over the party, accordingly as the facts might be shown to be. The Justice's liability commenced then, if at all, when he rendered the judgment on the charge, and ordered the plaintiff into custody of the Constable until the fine and costs were paid. He could legally make such order in a case where he had jurisdiction to try it ; that is, he had power to commit the party upon default of payment. (Hart. Dig. Art. 1715.)

The question then arises, do the facts, stated in this plea, show that the plaintiff was tried and committed upon a charge, of which the Justice had jurisdiction, it being for laying violent hands on, and unmercifully whipping and abusing the slave. (Stated in the warrant to be the slave of Jacob Fisher.)

It is to be remarked, 1st. That the amount of the fine is within the jurisdiction of the Justice, and the charge includes facts, which constitute a simple assault and battery. In the case of Nix v. The State, (13 Tex. R. 575,) the indictment charged the defendant, Nix, with having, with a drawn knife, cut, bruised and wounded, beaten, illtreated, &c., the slave of another. And, notwithstanding the aggravation, it was treated in both the District and Supreme Courts as a charge of assault and battery, and not as a charge of cruel treatment un-

der Article 2587. The facts in that case certainly present as great enormity, as those necessarily imported in the charge in this case, with the addition of the use of a deadly weapon in that, which does not appear in this.

2nd. That the charge in this case has no technical reference or pertinency to the Act relating to cruel treatment to slaves, as it does not follow the words of the Statute, and as it does not show that plaintiff had any control over the slave. In confirmation of this too, the plaintiff, in his petition, complains that he was arrested and tried on a charge ; " that your petitioner did violently lay hands on Jacob Fisher's boy, Alfred, and of maltreating the slave boy, Alfred, which charge your petitioner avers to be untrue."

The description of the charge, as given by the petition, differs from the language of the Statute, further than that contained in the plea, and shows that the plaintiff did not understand the charge as having a specific reference to the Statute concerning cruel treatment to slaves.

Again, there was no objection taken, or question raised, on the trial before the Justice, in relation to the want of jurisdiction, or in relation to the particular Statute, under which the plaintiff was tried. And if the Justice had had reference to this Statute on the trial, he would most probably have read it to the jury, to enable them to determine whether or not the party charged was guilty, and to instruct them as to the punishment, when he must have seen that the fine exceeded his jurisdiction, and also that jurisdiction of that particular offence was expressly given, in the same clause, to the District Court.

Now, if the entry of the judgment had been regularly made out in the form of a conviction for an assault and battery on the slave, it not being inconsistent with the charge under which the plaintiff was arrested, and there being no malice or corruption shown, the Justice would not be liable, even if the facts proven amounted to cruel treatment, and would have

authorized an indictment for that offence : for that would have been a mistake of judgment, while acting in a judicial capacity, in assuming to act within the recognized scope of his jurisdiction. Thus it was held that a Justice was not liable for having, upon complaint made to him, caused the arrest of a person, who was circulating an abolition petition on Sunday, under an Act, authorizing the Justice to impose a fine on any one who should be guilty "of any servile laboring or working on that day." Whether the circulation of the petition was "servile laboring or working," was a question which the Justice had to determine, and for an error of judgment, without malice or corruption, he was not responsible. (Stewart v. Hawley, (and English case cited of Mills v. Callett,) 21 Wendall, 552.) So of a judicial error in determining a theatre to be a dwelling house. (Henderson v. Brown, 1 Caines R. 92.)

So in erroneously determining a particular vessel to be a "boat," seized under the Bum-boat Act in England. (Brittain v. Kinnaird, 1 Brod. & Bin. R. 432 ; 5 Eng. Com. L. R. 728.)

So an erroneous excommuncication by the Vicar-General of the Bishop of Chester, &c., as surrogate, &c. (Ackerly v. Parkinson, 3 M. & S. R. 411.)

So for erroneously issuing a warrant against a freeholder, without the necessary oath, &c. (Rogers v. Mulliner, 6 Wendall R. 597 ; see also for same principle, Bich v. Lake, 1 Modern R. 185.)

The entry, though not in regular form of simple assault and battery, necessarily includes it ; it might possibly include a case of assault and battery, in which a deadly weapon was used, in which case the Justice would have no jurisdiction to try it, and it does not appropriately present a case, having reference to the Act concerning cruel treatment, of which the Court would have no jurisdiction.

Shall we construe this entry, so as to presume from it that the Justice acted on a state of facts, within his jurisdiction,

rather than upon a state of facts, which might possibly have existed, consistently with the entry, which were not within his jurisdiction. Or, in other words, shall we not rather presume, as he assumed to act, that he acted on a state of facts, constituting a simple assault and battery, rather than those constituting a battery with a deadly weapon or cruel treatment? We think so.

In this question is involved the general powers and responsibilities of Justices of the Peace, as Judges of a Court in this country. Chief Justice De Grey says: "1st. It is agreed that Judges in the King's Superior Courts of Justice are not liable to answer personally for their errors of judgment. 2nd. The like in Courts of general jurisdiction, as gaol-delivery, &c. 3rd. In Courts of special and limited jurisdiction, having power to hear and determine, a distinction must be made. While acting within the line of their authority, they are protected as to errors of judgment, otherwise they are not protected. In all the cases, where protection is given to the Judge, giving an erroneous judgment, he must be acting as Judge. The protection, in regard to the Superior Courts, is absolute and universal; with respect to the inferior, it is only while they act within their jurisdiction." (Miller v. Seare, 2 Black R. 1140.) Chancellor Kent, who left behind him a blaze of light in every path of jurisprudence into which he traveled, asserts in the great case, in New York, of Yates v. Lansing, upon the authority of the older English cases, that "for what a Justice of the Peace did in Sessions, he was not amenable." (5 Johns. R. 292.)

The Justices in England separately had no power to hear and determine criminal offences; but two being present in Session, one of whom was of the quorum they had. Their jurisdiction, however, was limited, did not extend to treasons, and they were enjoined in their commissions not to try cases of difficulty in felonies, and were therefore in practice con-

fined to the lower grade of felonies and misdemeanors. (5 Bacon Ab. 405, " JUSTICE OF THE PEACE.")

It is laid down also that " every Court, by having power given to it to fine and imprison, is thereby made a Court of record, the proceedings of which can only be removed by writ of error or *certiorari.* (2 Bacon, 625 ; Salk. 200 Ed. Raym. 213, 252, 454.)

Our Justices' Courts are not only given power to fine and imprison, but an extensive jurisdiction to finally try misdemeanors, concurrently with the District Court, with power to empannel a jury, when demanded, and also an extensive, exclusive, original jurisdiction in civil causes. They hold regular Sessions, and keep written entries of their proceedings and judgments, in a book styled a docket. Our District and Supreme Courts are also limited in their jurisdictions. All Courts in the State together do not combine the whole judicial power. A portion of it belongs the Federal Courts. All Courts are, and should be, responsible for malicious acts, corruption and oppression, the superior, by impeachment of the Judges, and the inferior, by indictment and civil suit before the Superior Courts. The Justices' Court has no seal, and, therefore, in some respects, in relation to the authentication of its records, it cannot be put on a footing with Courts of record. But in reference to its power of hearing and determining causes, it might be difficult to find the reason (if it were necessary now to go into that question,) why the same principle which secures indemnity to the Judges of the District and Supreme Courts, would not equally apply to the Justices Courts. In all cases, an appeal, in some form, is given, and would generally be found adequate, unless in cases of malice and corruption.

It is the tendency of American decisions to liberalize the rule of construction with reference to the inferior Courts. Our Probate Courts, generally, would strictly come under the denomination of Courts of special and limited jurisdiction.

Still, liberal presumptions are indulged in reference to their orders and judgments, although that which gave them power to act, as the predicate for taking jurisdiction, might not appear in the record. (Tucker v. Harris, 5 Geo. 1, and cases cited and reviewed ; 1 Con. R. 467 ; 6 Porter R. 219 ; 7 Ala. R. N. S. 855 ; 2 Peters R. 165.)

The rule then that with respect to Courts of limited jurisdiction, everything must appear on the record strictly and affirmatively, which will give them jurisdiction to hear and determine, is rapidly giving way by the application to our Courts, as they are actually constituted, the same principles which originally formed the rules with reference to their own Courts in England. Nor is it easy to reconcile all the authorities in reference to those rules. In England it was held that trespass would not lie for arresting a man on a *ca sa*, issued upon a judgment, rendered in Westminster, on a cause of action, less than forty shillings, arising in Bristol, although the Statute pronounced such judgment void. This want of jurisdiction must have appeared on the face of the record. (2 Salk, 675.) This may be accounted for by the judgment being rendered in the Superior Court of Common Pleas. Yet this case is made the precedent for applying the same rule to a judgment in a Justice's Court, where the judgment appeared to be rendered for more than five dollars cost, the Justice being limited to that amount. Said judgment was held not to be void. (Butler v. Potter, 17 John. R. 144.) Again, it was held that where the record showed a discontinuance of the suit, and afterwards a judgment upon which execution issued and levied, the Justice issuing execution was not liable in trespass. His rendering a jugment in a suit in which he had thus lost jurisdiction, being an error of judgment, he could not be sued. (Horton v. Auchmoody, 7 Wend. R. 201.) Same principle, Easton v. Calender, (11 Wend. R. 91.) These are cases where the want of jurisdiction was apparent and still the officers were not held responsible.

It will be found that in the great mass of cases this rule, in its strictness, has been applied to the acts of single Magistrates in reference to their acts as ministerial officers rather than as Judges in Session with power to hear and determine.

Suppose it be admitted that the Justice of the Peace must so shape his entry in a conviction that it must affirmatively appear, with strict accuracy, that every fact existed and was established, which was necessary to give his Court jurisdiction ; it must appear that the assault and battery was committed in the county ; that the assault and battery was not made with a deadly weapon and the like, which would require a capacity in our Justices for special pleading equal to the drafting of a plea in abatement ; the consequences of which nicety in their entries need not be commented on.

The Justice, however irregular his entry, is not concluded by it. "If the magistrate be warranted in taking cognizance of the charge, and do in fact convict, the conviction, however irregularly drawn up, will protect him in an action of trespass against him by the party convicted. (Massey v. Johnson, 12 East. 71 ; Strickland v. Ward, 7 Tex. R. 633–4.) In case of Cropps v. Durden, (Cowp. 640,) it appeared on the face of the convictions that the Magistrate had no jurisdiction." (5 Bacon Ab. 429. "JUSTICE OF THE PEACE.") If then it may be shown by evidence on the trial, that he had jurisdiction of the case actually tried before him, even in contradiction to his own record of conviction, why should a record of conviction, which is offered in evidence in his favor, and which on its face is not inconsistent with his jurisdiction, be construed with every intendment against him, as if it were a plea in abatement, which had to be certain to a certain intent in every particular.

Public policy, and the nature of their powers and duties, and the order of legal capacity that must be here employed to fill such an office, all forbid the application of such a rule to Justices' acts.

Therefore the evidence in this case, showing that the terms of the conviction included a case of assault and battery necessarily, of which the Justice had jurisdiction, and not containing anything inconsistent with, or repugnant to it, and he having acted and imposed a fine within the limit of his power, it will be presumed, in the absence of other evidence, that he had jurisdiction of the case tried before him, rather than that he had not.

Believing the facts to have presented a good defence as to both parties the judgment is affirmed.

Judgment affirmed.