[Civil No. 3916. Filed January 31, 1938.]

[75 Pac. (2d) 689.]

WILLIAM W. DAVIS, Appellant, v. GLENN BURRIS, Appellee.

Mr. E. S. Clark and Mr. Earl Anderson, for Appellant.

Mr. L. C. McNabb, for Appellee.

ROSS, J.—The plaintiff, Glenn Burris, having on June 10, 1935, pleaded guilty to a drunk driving charge in the justice court of Scottsdale precinct, Maricopa county, the defendant, William W. Davis, justice of the peace therein, sentenced him to ninety days in the county jail and ordered him committed.

June 13, 1935, plaintiff filed notice of appeal to the superior court of said county and tendered $300 as a

cash bond on appeal. Defendant refused to approve bond or to release plaintiff from prison or to allow the appeal. Plaintiff remained in jail 30 days, or until after July 8th, on which date this court, in *Burris* v. *Davis*, 46 Ariz. 127, 46 Pac. (2d) 1084, 1085, handed down its opinion holding plaintiff was entitled to an appeal, notwithstanding he had pleaded guilty to the charge of drunk driving. Thereupon plaintiff appeared before the Honorable HOWARD C. SPEAKMAN, judge of division No. 3 of the superior court of said county, and again pleaded guilty, and was by Judge SPEAKMAN sentenced to 30 days in the county jail, to commence and date from original imprisonment. Under this last sentence plaintiff was immediately discharged, as he had at the time served 30 days.

February 24, 1936, plaintiff commenced this action against Davis for damages for the latter's refusal to allow his appeal. He asked in his complaint for $5,000 actual and $5,000 punitive damages by reason of loss of time (the 30 days he was in jail), "deep humiliation, embarrassment," and for attorney's fees and court costs. The complaint alleges defendant acted willfully, wrongfully, wickedly, and unlawfully in refusing to allow the appeal and to release plaintiff from prison. Defendant's answer consists of a general demurrer and a general denial. The case was tried with a jury, and the jury's verdict was in favor of plaintiff in the sum of $69 actual damages. From a judgment duly entered for this amount and costs, the defendant has appealed.

The questions presented by the demurrer to the complaint and by the evidence are: (1) Whether a judicial officer in the performance of his duties is liable in damages for a mistake in his judgment of the law; (2) whether the defendant justice of the peace in refusing to allow the appeal was acting judicially or minis-

terially; and (3) whether in any event plaintiff is entitled to damages, it appearing that he was imprisoned for 30 days only, the minimum punishment under the law.

 In order to claim immunity from civil action for his acts, it is generally necessary that a judge be acting within his jurisdiction as to subject matter and person. There is no question but that the defendant possessed such jurisdiction in this case. The offense was committed in his precinct and is of the grade triable in justice court. The statute defining the crime and fixing the limits of punishment that must be imposed by the court for its violation is as follows:

"Any person under the influence of intoxicating liquor or narcotic drugs, or who is a habitual user of narcotic drugs, who shall drive any vehicle upon any highway within this state, shall be guilty of a misdemeanor, and punished by imprisonment in the county jail for not less than thirty nor more than ninety days. No judge may suspend imposition of sentence for a violation of this section, and if upon the conviction for three such offenses; the party convicted shall, forfeit his driver's license." Section 1688, Rev. Code 1928, as amended by chapter 33, Laws of 1935.

Justices of the peace have jurisdiction "in criminal cases, other than felonies, where the punishment is a fine not exceeding three hundred dollars, or imprisonment in the county jail not exceeding six months, or both." Section 4178, Rev. Code 1928.

There being a concurrence of jurisdiction of the justice court of Scottsdale precinct over the person and the subject matter, the rule of law is as follows:

"It is unquestionable, and has been from the earliest days of the common law, that a judicial officer cannot be called to account in a civil action for his determinations and acts in his judicial capacity, however erroneous or by whatever motives prompted. This rule rests on the highest considerations of public policy, for the integrity of the judiciary demands that the threat

of personal liability shall not be held over judicial officers in the discharge of their functions, and it is a principle lying at the foundation of all well ordered jurisprudence that every judge, whether of a higher or a lower court, exercising the jurisdiction vested in him by law, and deciding on the rights of others, should act on his own free, unbiased convictions, uninfluenced by any apprehension of consequences." 15 R. C. L. 543, § 31.

See, also, *Shampagne* v. *Keplinger,* 78 Mont. 114, 252 Pac: 803; *Waugh* v. *Dibbens,* 61 Okl. 221, 160 Pac. 589, L. R. A. 1917B 360; 33 C. J. 981, § 115.

In *Wall* v. *Trumbull,* 16 Mich. 228, Judge COOLEY laid down the rule with reference to a judicial officer's liability to a civil action in the following language:

"A ministerial officer has a line of conduct marked out for him, and has nothing to do but to follow it; and he must be held liable for any failure to do so which results in the injury of another. A judicial officer, on the other hand, has certain powers confided to him to be exercised according to his judgment or discretion; and the law would be oppressive which should compel him in every case to decide correctly at his peril. It is accordingly a rule of very great antiquity, that no action will lie against a judicial officer for any act done by him in the exercise of his judicial functions, provided the act, though done mistakenly, were within the scope of his jurisdiction. [Citing cases.] This principle of protection is not confined to courts of record, but it applies as well to inferior jurisdictions; the only difference being that authority in a court of general jurisdiction is to be presumed, while the jurisdiction of inferior tribunals must affirmatively appear on the face of their proceedings [citing cases]. Nor does the rule depend upon whether the tribunal is a court or not; it is the nature of the duties to be performed that determines its application."

█ The motives that may have actuated defendant in refusing to allow the appeal are not material. They may have been willful, wicked, and wrongful, although

there is no evidence to that effect unless it is inferable from the fact that the highest penalty allowed under the law was inflicted and the insistence that it be served by immediate imprisonment. It may be noted also that the jury evidently found against plaintiff on these allegations, for the reason that it gave him no punitive damages. In *Yaselli* v. *Goff*, 2 Cir., 12 Fed. (2d) 396, 399, 56 A. L. R. 1239, 1244 (affirmed in 275 U. S. 503, 48 Sup. Ct. 155, 72 L. Ed. 395), the court said:

"There are weighty reasons why judicial officers should be shielded in the proper discharge of their official duties from harassing litigation at the suit of those who think themselves wronged by their decisions and that injustice has been done. A defeated party to a litigation may not only think himself wronged, but may attribute wrong motives to the judge whom he holds responsible for his defeat. He may think that the judge has allowed passion or prejudice to control his decision. To allow a judge to be sued in a civil action on a complaint charging the judge's acts were the result of partiality, or malice, or corruption, would deprive the judges of the protection which is regarded as essential to judicial independence. It is not in the public interests that such a suit should be maintained; and it is a fundamental principle of English and American jurisdiction that such an action cannot be maintained."

██ Plaintiff does not question the rule of law as above stated when applied to judicial action, but he insists that such rule does not fit the facts of this case, for the reason that in accepting and approving bail on appeal defendant would be acting in a purely ministerial matter, and that he had no power to say whether the right of appeal existed or not. At the time defendant refused to approve cash bond and certify and transmit the record to the superior court, it was not at all certain that a defendant who had pleaded guilty to a misdemeanor in a justice court was entitled to an appeal. It was recognized of course that a de-

fendant who pleaded not guilty and contested the charge against him could, if convicted, appeal and have his case tried *de novo* in the superior court, and that, when such a person complied with the law as to notice of appeal and bond, it became the ministerial duty of the justice of the peace to transmit the record to the appellate court. Sections 5153–5155, Rev. Code 1928. But, when defendant judicially acknowledged guilt, solemnly admitted in court that he had done the act charged, and was ready to take whatever punishment the law prescribed, a different question arose—a judicial question and one upon which some of the highest courts of the land are not in accord. In *Burris* v. *Davis, supra,* the superior court of Maricopa county, on plaintiff's application for a writ of *mandamus* against Davis, refused the writ, presumably on the ground that plaintiff, having pleaded guilty, was not entitled to an appeal. In the opinion of this court in that case we said:

"It is the ordinary rule, in the absence of special constitutional or statutory provisions to the contrary, that a defendant in a criminal case who has pleaded guilty after being fully apprised of his legal rights, may not appeal from a judgment and sentence on such plea, except perhaps upon jurisdictional questions. *Stokes* v. *State*, 122 Ark. 56, 182 S. W. 521; *State* v. *Stone,* 101 W. Va. 53, 131 S. E. 872; *State* v. *Bergeron,* 152 La. 38, 92 So. 726; *Browsky* v. *Perdue,* 105 W. Va. 527, 143 S. E. 304; *State* v. *Stafford,* 160 Md. 385, 153 Atl. 77. Indeed, appellant admits this to be true in most states, but contends that by virtue of the constitutional and statutory provisions above set forth the rule in this jurisdiction is different. So far as the constitutional question is concerned, the precedents are not in harmony. We have been cited to the decisions of three states having constitutional provisions practically similar to that of our Constitution above set forth. In the state of Washington, under such a provision, it is held that an appeal will not lie. *State* v. *Haddon,* 179 Wash. 669, 38 Pac. (2d) 227; *State* v.

*Eckert,* 123 Wash. 403, 212 Pac. 551. On the other hand, in the states of Utah and Texas a contrary view is taken, the courts holding that under such constitutional provision while an appeal must be taken within such limits and restrictions as to time and procedure as the Legislature might prescribe, the constitutional right of appeal applies when defendant has pleaded guilty as well as in other cases. *Weaver* v. *Kimball,* 59 Utah 72, 202 Pac. 9; *Ex parte De Loche,* 50 Tex. Cr. Rep. 525, 100 S. W. 923. . . .

"Since the case is one of first impression and the authorities do not agree, we consider it from the standpoint of reason, justice, and public policy."

So it was not until after this court spoke that it was known that one who pleaded guilty could appeal. Having no precedent to guide him, the defendant justice of the peace took the view that seemed most reasonable to him. He exercised his best judgment and that was all he could do. A given act may be ministerial, but whether it is one's duty to perform it under the circumstances is, we think, always a judicial question, and that is what confronted the defendant in this case.

 Under the law, no less than 30 days in the county jail could be inflicted on plaintiff for driving a motor vehicle upon the highways while under the influence of intoxicating liquors. Thirty days it has to be, with no suspension of sentence. That is all plaintiff has suffered in this case. It does not appear from his complaint or proof that he sustained any peculiar damage by reason of being confined in the county jail the 30 days immediately succeeding his plea of guilty rather than some other 30 days. The 30 days he was in the county jail are the thirty days the superior court inflicted, retroactively it is true, but he benefited by it for he had already served his sentence. He cannot now say his imprisonment was false or illegal and that for the injury sustained defendant is liable. If he

sustained any damages in the loss of wages, or in reputation, or in mental anguish, they are the result of his own misdeeds, the law's exactions, and must be borne by him.

We think the demurrer to the complaint should have been sustained, also that the motion for an instructed verdict at the close of plaintiff's case should have been granted, for the reason that no cause of action was stated in the complaint nor was any made out by the evidence submitted.

The judgment of the lower court is reversed and the cause remanded, with directions to dismiss the complaint.

McALISTER, C. J., and LOCKWOOD, J., concur.