Donald Wayne PRUITT, Appellant,

v.

Clinton W. TURNER et al., Appellees.

No. 3759.

Court of Civil Appeals of Texas.

Waco.

May 12, 1960.

Rehearing Denied June 23, 1960.

Harry W. Flentge, Gatesville, for appellant.

Byron L. McClellan, Gatesville, Beard, Kultgen & Beard, Waco, for appellees.

McDONALD, Chief Justice.

Plaintiff Pruitt filed this suit for damages in the amount of $975 against defendant Turner (and his bondsman, Southwestern Indemnity Company), in the County Court of Coryell County. Defendant Turner is Justice of the Peace of Precinct 2 of Coryell County. Plaintiff Pruitt was charged with a misdemeanor criminal offense in such court. He entered a plea of not guilty and demanded a trial by jury. Defendant Turner denied Pruitt a jury unless he paid a jury fee in the amount of $3. Defendant Justice of the Peace Turner thereafter called the case for trial, and tried and convicted Pruitt without a jury. Plaintiff Pruitt alleges that the Constitution and Statutes of Texas guarantee for him a jury in such instance, without payment of a jury fee, and that the provision of same by the Justice of the Peace was a ministerial duty, for breach of which he is liable for plaintiff's resulting damages.

The Trial Court sustained an exception to plaintiff's cause of action (which amounted to a general demurrer); plaintiff refused to amend, and the Trial Court dismissed the cause.

Plaintiff appeals, alleging a violation by defendant of a legal right and damage; and prays that the judgment of the Trial Court be reversed, and the cause be remanded for trial.

■ The issue presented is whether a Justice of the Peace is immune to damages in tort for denying a defendant who pleads not guilty, a jury trial without the defendant posting a jury fee. Art. 1, Sec. 10 of the Constitution of Texas, Vernon's Ann. St., provides:

"Rights of accused in criminal prosecution Sec. 10. In all criminal prosecutions the accused shall have a speedy public trial by an impartial jury."

Article 892, Code of Criminal Procedure (Trial in Justice Court) provides:

"If the accused does not waive a trial by jury, the justice shall issue a writ commanding the proper officer to summon forthwith a jury of six men qualified to serve as jurors."

Article 1059, Code of Criminal Procedure, provides:

"The amount due jurors and bailiffs shall be paid by the county treasurer, upon the certificate of the proper clerk or the justice of the peace, stating the service, when and by whom rendered, and the amount due therefor."

From the foregoing, there can be no question but that Pruitt was entitled to a jury without depositing a jury fee; and that the Justice of the Peace was not justified in refusing to summon a jury to determine his case.

The record reflects that the foregoing provisions of our Constitution and Code of Criminal Procedure were affirmatively brought to the attention of the Justice of the Peace. We think their provisions are so clear that any person should understand their meaning from a reading thereof.

■ We revert to the issue for determination: Under the facts, is the Justice of the Peace and his bondsman subject to civil liability for denying a jury to a defendant who pleads not guilty and demands a jury trial.

25 Tex.Jur., pp. 254, 255 states the rule thusly:

"Under the broad principles applicable to public officers generally, a judge is not civilly liable for acts performed in the exercise of his judicial

functions, even though they were wilful or malicious. * * *

"The doctrine of judicial immunity does not, however, apply with respect to acts done in a purely ministerial capacity; as to such acts a judge stands in the same position as any other person."

26 Tex.Jur. pp. 800, 801, in discussing the civil liability of a justice of the peace, says:

"The rule that a judge is not civilly liable for anything done by him in the exercise of his judicial functions * * * gives absolute immunity to a justice of the peace acting in his judicial capacity and within his jurisdiction. * * *

"Acts by a judicial officer in a ministerial capacity are on a different footing; as to such, it is no defense that the justice acted in good faith and in intended fulfillment of his official duty. *The distinction between judicial and ministerial acts depends on whether a discretion has been conferred.*"

In the early case of Bumpus v. Fisher, 21 Tex. 561, 567, our Supreme Court in discussing the liability of a judge says:

"While acting within the line of their authority, they are protected as to errors of judgment, otherwise they are not protected. In all the cases, where protection is given to the judge, giving an erroneous judgment, *he must be acting as judge.*"

Our Supreme Court in Rains v. Simpson, 50 Tex. 495, after laying down the rule that judicial officers are not liable to personal action for official acts within their jurisdiction; limits the immunity to *judicial* actions and makes an exception of *ministerial* actions. Such case holds:

"The application of the principle of immunity from private suit has been a source of difficulty, the practical solution of which depends upon whether the given act was *ministerial* or *judicial*. As a general rule, in the former case the action will, and in the latter it will not, be sustained.

"*The distinction between the two is thus defined: 'Where the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment, the act is ministerial; but where the act to be done involves the exercise of discretion or judgment, it is not to be deemed merely ministerial.'*"

The foregoing definition of and distinction between judicial acts and ministerial acts is quoted and adopted in Jarnagin v. Garrett, Tex.Civ.App., 69 S.W.2d 511, W/E Ref.

31 Am.Jur. p. 222, expresses the rule thusly:

"Sec. 20 (Justices of the Peace—Liabilities) *Ministerial Acts*—The general immunity of a justice of the peace from liability for judicial acts within his jurisdiction does not extend to ministerial acts, in the performance of which a justice of the peace is responsible for error and misconduct in like manner and to the same extent as all other ministerial officers. Thus, many cases make a distinction between the judicial and ministerial acts of a justice, and hold that justices of the peace are responsible in a civil suit to individuals for all damages arising from every illegal act they may have done in the exercise of their ministerial duties.

"Sec. 21—*Particular acts as Ministerial or Judicial*—Generally speaking, where the law defines and prescribes the duties to be performed by an officer with such precision and certainty as to leave nothing to the exercise of discretion or judgment, the act is deemed to be ministerial in character, but where the act to be done involves the exercise of discretion or judgment, it

is regarded as judicial in character * * *."

To the same effect is 30 Am.Jur. pp. 53 and 54.

13 A.L.R. 1345 lays down the general rule of immunity of judges for acts performed as such, so long as the judge acts within his jurisdiction and in a judicial capacity; and (on page 1347) continues:

"A distinction is to be noted between acts which are judicial in their nature, and those of an administrative or ministerial character. The protection extends only to judicial decisions or acts of a judicial character, and not to mere administrative acts."

It is pointed out that in a ministerial function, a line of conduct is marked out and the judge has nothing to do but follow it; and may be held liable for any failure to do so which results in the injury of another. See also 173 A.L.R. p. 805, et seq.; Heyn v. Mass. Bonding & Ins. Co., Tex.Civ.App., 110 S.W.2d 261, W/E Dismd.; 34 Tex. Jur., Sec. 84, pp. 466, 467; 48 C.J.S. Judges § 64, p. 1032; 51 C.J.S. Justices of the Peace § 20, pp. 38, 39.

This poses the question: Was the act of providing a jury for the defendant a judicial function or a ministerial function?

We are not here dealing with the question of the jurisdiction of the Justice of the Peace, nor with complaint with the manner in which he has performed a judicial function. We are dealing solely with his failure to perform a statutory duty prescribed explicitly by the statutes; that is to impanel a jury for a defendant in a criminal case, unless such defendant has affirmatively waived such jury. We are dealing with the Justice's failure to perform one of his clerk's functions; and which function is prescribed with such exactitude by our statutes, that it is *ministerial* under our Supreme Court's definition, supra.

We think our Constitution and Code of Criminal Procedure prescribed the duties of the Justice of the Peace to provide a jury in the instant case, with that certainty, precision and exactitude that is free from all doubt. The act to be performed was therefore ministerial, and not judicial, and the refusal of the Justice of the Peace to provide a jury subjects him to civil liability for damages.

Defendant relies on the case of Davis v. Burris, 51 Ariz. 220, 75 P.2d 689. In that case the Justice of the Peace refused to approve an appeal bond and transmit the record to the appellate court, upon request, after a defendant's conviction for drunk driving, upon a plea of guilty. A general statute provided for appeals from the Justice Court. The Arizona Supreme Court held in that case, that determination of the right to appeal *after entering a plea of guilty,* was a judicial question; and a question upon which some of the highest courts of the land were not in accord; and that it was not known until the Arizona court spoke (in the case involving these parties) *whether one who had pleaded guilty could appeal or not.* We think this case inapplicable to a determination of the case at bar.

■ This brings us to the question of what damages plaintiff Pruitt has shown himself entitled to. Pruitt alleges that he was damaged $975 in actual and exemplary damages. Exemplary damages cannot be recovered since plaintiff's petition on its face reflects that the Justice of the Peace action was not malicious. Plaintiff says he was convicted by the Justice of the Peace without a jury, and in consequence was forced to appeal his case to County Court at a cost of $200 for attorney's fees; and that this constitutes an actual damage. Such is too speculative. There is no way for anyone to know whether the jury, if impaneled, would have convicted or acquitted plaintiff. This, as a matter of law, negates plaintiff's right to actual damages, not only for attorney's fees, but also for loss of time, humiliation and mental anguish. Plaintiff is therefore entitled to recover nominal damages only.

Since the opinion of our Supreme Court in Rains v. Simpson, supra (as well as the other authorities cited), are comprehensive and clear, and since the Supreme Court has not seen fit to change such rule (Jarnagin v. Garrett, supra), and since we are of the view that such authorities are applicable to the factual situation here involved, it is our duty to reverse the judgment of the Trial Court, and render judgment for plaintiff Pruitt against defendants Turner and Southwestern Indemnity Company for $1 and costs.

Reversed and rendered.

WILSON, Justice (dissenting).

I respectfully differ. The opinion applies the wrong criterion in this case, and in my opinion directly opposes the settled law throughout this country, at common law and in Texas. The majority subjects the action of a judge to the test of whether his act is judicial or ministerial. This is possibly a proper test when the judge or justice of the peace is acting in an administrative or quasi-judicial capacity as in Rains v. Simpson or Jarnagin v. Garrett, but in each of those cases liability was denied.

The true test however, in a judicial proceeding, is whether the judge or justice is acting within the *jurisdiction*. This, in truth, is the actual holding in Rains v. Simpson. There the justice of the peace was not acting in a judicial proceeding. He was performing an administrative function as the head of the present equivalent of the commissioner's court in refusing to approve a tax collector's bond. He was not, in the present sense, acting in a judicial proceeding. Nevertheless, the Supreme Court first announced the guiding rule: "It was a settled principle at the very foundation of well-ordered jurisprudence that every judge, whether of a higher or lower court, *in the exercise of the jurisdiction,* conferred on him by law, had the right to decide according to his own free and unembarrassed convictions, uninfluenced by any apprehension of private pros-

ecution." No sooner had the court announced the guide than it quoted Judge Cooley, who also fixed the touchstone as being whether the officer was "acting within the limits of his jurisdiction." The only real answer which the court then gave to the only question involved is contained in the last sentence of the opinion: "The action then, of the County Court being a judicial act *in the exercise of the jurisdiction* conferred by statute, the exceptions of the defendant's were properly sustained." It is important to note the court there spoke of a judicial (discretionary) "act", and not a judicial proceeding.

We do not have to speculate as to what our early Supreme Court regarded as the determining factor of judicial immunity. The court consisting of no less an assemblage than Hemphill, Wheeler and Roberts, speaking through the latter in Bumpus v. Fisher, 21 Tex. 561, twenty-one times in the course of the opinion reiterates the essential element of whether "the justice of the peace had jurisdiction." There the justice of the peace was sued for an act committed in the course of a judicial proceeding. The entire case turns on decision as to whether the plaintiff was committed "upon a charge of which the justice had jurisdiction." The test here applicable was clearly stated: "if the charge upon which plaintiff was tried was simple assault and battery, the justice clearly had *jurisdiction* and the facts showing no malice, he would clearly *not be liable."* The court then consumes three pages to demonstrate he did have jurisdiction, and after reviewing the common-law development of immunity as dependent on jurisdiction, held that justices of the peace were on the same footing as judges of superior courts; that they were amenable for breach of responsibility only as were judges of superior courts; and that unless it affirmatively appeared of record they had no jurisdiction of the judicial proceedings in which they acted, they were not civilly liable. As to the present holding, that great court said, "Public policy, and the nature of their powers and du-

ties and the order of legal capacity that must be here employed to fill such an office, all forbid the application of such a rule to justices' acts." The entire decision turned on existence vel non of jurisdiction.

In 31 Am.Jur., Justices of the Peace, Sec. 28, p. 228 much of the opinion in Rains v. Simpson is quoted as a predicate for the rule I believe is controlling: "Where a justice of the peace acts fully *within his jurisdiction* of the subject matter and has acquired jurisdiction of the person in the particular case, he is not liable for acts done in the case." The converse of this rule, for the universality of which an inspection of the footnote is sufficient, is stated, Id. p. 229: "The generally accepted rule is that a justice of the peace is civilly liable when he acts without jurisdiction of the person and without general jurisdiction of the subject matter." The identical test is paraphrased in 26 Tex.Jur., p. 800, Sec. 15, i. e., when he is "acting within his jurisdiction." Rains v. Simpson is among the authorities cited.

In Mabry v. Little, 19 Tex. 337, Justice Wheeler held that even if the unlearned justice of the peace had no jurisdiction, if the plaintiff submitted to his jurisdiction he waived the trespass and an action for damages would not lie. In Anderson v. Roberts, Tex.Civ.App., 35 S.W. 416, 417, the rule is stated that even if the justice improperly determines he has jurisdiction, he cannot be held liable for his acts for "When the state confers judicial powers upon an individual it confers him with full immunity from private suits." The general rule is similarly stated in 51 C.J.S. Justices of the Peace § 19, p. 36, and 173 A.L.R. 802. The jurisdictional test has been reiterated by such venerable authorities as Coke, Bacon, Blackstone, Kent and the ancient Dalton's "Countrey Justice."

In 1613 Coke, in the case of the Marshalsea, 10 Coke Rep. 76a, summarized the holdings in the earlier Year Books relating to immunity: "a difference was taken when a court has jurisdiction of the cause, and proceeds inverso ordine or erroneously. There no action lies. But when the court has not jurisdiction then the whole proceeding is coram non judice and actions will lie."

The early Supreme Court of Texas simply epitomized the common-law rule and adopted it in Texas. "From the Year Books to the present day, this distinction between an abuse of jurisdiction and an absence of jurisdiction has been maintained. Indeed, the fact that from the 16th to the 19th centuries a large part of the local government of the country was carried on by justices of the peace acting under judicial forms, made the preservation of this distinction and its consequences a necessary safeguard to the liberty of the subject." VI. Holdsworth, History of English Law 240.

Appellant does not suggest the justice court had no jurisdiction. He in fact invoked it, moved to quash the complaint and called for a jury. He complains only of erroneous action of the justice of the peace within his jurisdiction. I would affirm.