Affirmed and Opinion filed August 28, 2003









Affirmed and Opinion filed August 28, 2003.                           

 

 

 

 

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-00591-CV

____________

 

B. K., INDIVIDUALLY AND AS NEXT
FRIEND OF T.K., C.K., P.K., AND N.K., MINORS, Appellant

 

V.

 

LYNN JACOB COX, INDEPENDENT
EXECUTRIX OF THE ESTATE OF MICHAEL DENNIS COX, DECEASED, AND BAYLOR COLLEGE OF
MEDICINE, Appellees

 



 

On Appeal from the Probate Court Number Three

Harris  County, Texas

Trial Court Cause No. 310529-402

 



 

O
P I N I O N








Appellant
Barbara K., individually and as next friend of T.K., C.K., P.K., and N.K.,
filed this negligence suit against the independent executrix of the estate of
Michael Dennis Cox and Baylor College of Medicine[1]
based on their alleged failure to report 
suspected child abuse of her children that they allegedly discovered
while performing psychological examinations ordered by a Harris County district
court.  The trial court granted appellees= motion for summary judgment based
on derived judicial immunity.  Although
the claims Barbara raises are slightly different from those raised in Delcourt, we affirm because the case is controlled
by the absolute immunity doctrine we discussed in Delcourt.[2]  This doctrine includes both judicial immunity
and derived judicial immunity.[3]

                          I. 
Factual and Procedural Background

Barbara
filed for divorce from her husband, Larry. 
The case was assigned to the 257th District Court.  Initially Larry was allowed unsupervised
visits with his children; however, at some point Barbara petitioned the court
to suspend Larry=s unsupervised contact with the
children because she was concerned about possible sexual misconduct by
Larry.  In response to Barbara=s
concerns, the judge ordered Dr. Michael Cox of the Baylor College of Medicine
to perform psychological evaluations and examinations of Barbara and Larry and
their children.  The court=s
order stated that Cox and Baylor were to act as an extension of the court in
performing these evaluations and examinations:

It is ORDERED that Dr. Michael Cox, Baylor Pilot Program,
Baylor College of Medicine,, [sic] Department of Psychiatry, 1 Baylor Plaza,
Houston,, [sic] Texas 77030 . . . is appointed as an extension of the Court as
the evaluating pychologist for evaluation and
examination of Larry . . .  Barbara . . .
and the children the subject of this suit. . . .

. . .

It is ORDERED that all written reports prepared by Dr.
Michael Cox setting out his findings, including results from all tests made, if
any, diagnosis, conclusions and observations shall be submitted directly to the
Court.

 








In
an affidavit the judge of the 257th District Court filed in connection with
this lawsuit, the judge testified as follows: (1) Baylor College of Medicine
created the Baylor Pilot Program in cooperation with the Court to provide Alower-cost
mental health evaluations@; (2) the Court and the Baylor Pilot
Program intended to have Ph.D psychology interns at
Baylor College of Medicine perform evaluations with Dr. Cox=s
oversight, with Dr. Cox and these interns functioning as an arm of the Court
and under the Court=s order; (3) the Court appointed Dr.
Cox and the Baylor Pilot Program to assist it in investigating, evaluating, and
assessing the mental and emotional condition, including allegations of sexual
abuse, of this family; and (4) Dr. Cox and the employees, agents, or servants
of Baylor College of Medicine involved in the evaluation of the family did so
to assist the Court in the integral judicial process of investigating,
evaluating, and assessing the family members= mental and emotional condition.

Dr.
Cox assigned intern Suman Rao
to help him evaluate Barbara, Larry, and the children.  In the summer of 1998, Rao
interviewed all members of the family. 
During these interviews,  two of
the children told Rao about events which led her to
believe that Larry was behaving inappropriately with the children.  Rao prepared a
report to the judge recommending that Larry have no visits with T.K. and only
supervised visitation with the other three children.  However, Rao left
Baylor suddenly, and the draft report was never sent to the court. 

About
eight months later, in March of 1999, Barbara notified Dr. Cox that at least
two of her children had made outcries that Larry had sexually assaulted
them.  After interviewing the children,
Dr. Cox made his first report to Children=s Protective Services (ACPS@)
and told the court about the situation, recommending that Larry be ordered not
to see the children until the matter was investigated.  The court followed the recommendation,
ordering Larry not to see the children. 
CPS investigated the reports and concluded that there was reason to
believe that the sexual abuse had occurred.








Because
of the long delay between the time Rao first became
aware of Larry=s inappropriate behavior and the
time that Barbara informed the experts that Larry was abusing their children,
Barbara sued the independent executrix of Dr. Cox=s estate (ACox
Estate@),
Baylor College of Medicine, Suman Rao,
and Larry.  She alleged that Dr. Cox and
Baylor were negligent because they did not report Larry=s
suspected child abuse to CPS.[4]  Barbara alleged that Rao
told Dr. Cox in the summer of 1998 convincing evidence existed that Larry had
committed various acts of sexual abuse against the children.  Barbara alleged that Dr. Cox ordered Rao to call CPS, but that Rao
left Baylor College of Medicine without contacting CPS.  Barbara alleged that these acts by Cox and
Baylor caused the children to continue to be subjected to their father=s
sexual abuse from the summer of 1998 through March of 1999.  In her petition, she did not assert that the
defendants knowingly failed to report any suspected child abuse, and she did
not allege they violated any criminal statute.

The
Cox Estate and Baylor moved for summary judgment, alleging that they were
entitled to absolute immunity from suit because the conduct in issue occurred
while they were functioning as an arm of the court.  The trial court granted this motion and
entered a final judgment.

                                       II. 
Issues Presented for Review

On
appeal, Barbara asserts the following issues for review:

(1)       Did
the trial court err in granting summary judgment based on judicial immunity?

(2)       Is
the failure to report suspected child abuse a judicial act?

(3)       Is
the statutory duty to report suspected child abuse mandatory or discretionary?

(4)       If
mandatory, are appellees entitled to judicial
immunity as a matter of law such that they are exempt from their mandatory
statutory and professional duties to report suspected child abuse?

(5)       If
discretionary, does a fact issue exist as to whether appellees
acted reasonably and in good faith so as to defeat summary judgment?

(6)       Does
judicial immunity extend to criminal acts and omissions?








(7)       Does the existence of statutory immunity
(which does not apply to the failure to report suspected child abuse) preclude
the application of judicial immunity?

                                                III. 
Standard of Review            

The trial court granted summary
judgment based on the affirmative defense of derived judicial immunity. The
summary judgment was proper only if the movants
conclusively established each element of this defense.  See Science Spectrum, Inc. v. Martinez,
941 S.W.2d 910, 911 (Tex. 1997). In reviewing this summary judgment, we take as
true all evidence favorable to Barbara and indulge every reasonable inference
in her favor. Id.  IV. 
Analysis

A.      Did
the trial court err in granting summary judgment based on derived judicial
immunity?

1. 
Rao, Baylor, and Cox were entitled to derived
judicial immunity.








Barbara=s
first issue is that Rao, Baylor, and Cox were not
entitled to derived judicial immunity. 
She recognizes the significance of the court appointing Cox and Baylor
and recognizes that at least some of what they did was Aintimately
associated with the judicial process.@ 
Thus, Barbara acknowledges that Texas protects non-judges who have been
appointed by a court as an arm of the court when (1) their function is
intimately associated with the judicial process, and (2) they exercise
discretionary judgment like a judge.  See Dallas County v. Halsey, 87 S.W.3d 552, 554 (Tex. 2002).  This
approach to immunity is called the functional approach. See id.; Delcourt v. Silverman, 919 S.W.2d 777, 781B83 (Tex. App.CHouston [14th Dist.] 1996, writ
denied).  But Barbara claims Cox and Baylor are not protectedCeven
though appointed by the court to function as an arm of the courtCbecause
they strayed from their judicial function when they failed to report suspected
child abuse.[5]  This argument reveals a fundamental
misunderstanding of the functional approach to absolute immunity.  

Generally,
once an individual is cloaked with derived judicial immunity because of a
particular function being performed for a court, every action taken with regard
to that functionCwhether good or bad, honest or dishonest,
well-intentioned or not­Cis immune from suit.  Halsey, 87 S.W.3d at 554.  Once applied to
the function, the cloak of immunity covers all acts, both good and bad.  See id. at 555 (stating that Aas applied in Texas, the functional
approach in applying derived judicial immunity focuses on the nature of the
function performed, not the identity of the actor, and considers whether the
court officer=s conduct is like that of the
delegating or appointing judge@).   The whole either
is protected or it is not.  See id. at 554B55.  So, here, if Cox and Baylor were entitled to
derived judicial immunity for any part of their psychological evaluations, they
were entitled to it for all parts.              We have already held that a
psychiatrist appointed to evaluate members of a family was entitled to derived
judicial immunity.  See Delcourt, 919 S.W.2d at 781B83. 
We concluded this for the following reason:

When a court appoints a mental health professional to
examine the child and the parents in a custody proceeding, the professional is
acting as a fact finder for the court. 
The court relies on the professional to provide information essential to
the decision‑making process. 
Without the protection of absolute immunity, such professionals would
be, at the very least, reluctant to accept these appointments.  This would in turn inhibit judges from
performing their duties. 

Id. at
783.  In fact, Delcourt
involved the very same judge and a similar order to the one we have in this
case.  See id. at 779, 781B83.  








In
Delcourt, to determine whether the
court-appointed psychiatrist was entitled to immunity, we looked to affidavit
testimony from the appointing judge and affidavit  testimony from the psychiatrist.  Here, we have the same type of testimony.[6]  The trial judge testified by affidavit that ADr.
Cox, Dr. Rao, and the employees, agents, or servants
of Baylor College of Medicine who aided them in their evaluation of [the
family] did so for the purpose of assisting the Court in the integral judicial
process of investigating, evaluating, and assessing the [family members=]
mental and emotional condition pursuant to the Court=s
order.@  In short, Dr. Cox, Dr. Rao,
and their colleagues were to help the trial judge perform a judicial function
of evaluating this family in an effort to determine custody issues.  The only other question to ask in determining
if immunity attaches was if Rao, Cox, and Baylor were
acting within the scope of this appointment when they allegedly neglected to
report suspected child abuse.  Rao=s affidavit establishes that they
were within the scope of the order because their actsCwhether
negligent or notCrelated to the family=s
evaluation.  See Delcourt, 919 S.W.2d at 783. 
Barbara did not controvert this evidence in the trial court.  Therefore, the trial court did not err in
holding that the Cox Estate and Baylor were immune from suit.  

Thus,
the Cox Estate=s and Baylor=s
summary-judgment evidence conclusively proved that they were entitled to
absolute immunity.  We overrule issues
one, two, and five.

2.       Possible
violation of statutes imposing criminal liability does not negate derived
judicial immunity in a suit by a private citizen.

In
spite of this evidence of immunity, Barbara claims that the doctrine of
judicial immunity did not shield the Cox Estate and Baylor from suit because
(1) Cox and Rao violated statutory dutiesCwhich
impose criminal liabilityC by not reporting suspected child
abuse, (2) the duty to report suspected child abuse is mandatory and not
discretionary, and (3) the statutory immunity given in section 261.106 of the
Texas Family Code overrides judicial immunity. 
As with her earlier assault on the doctrine of judicial immunity, these
arguments misinterpret and misapply the doctrine.








Barbara=s
first issue, whether judicial immunity continues to protect court-appointed
psychiatrists when they have violated a statute imposing criminal liability for
a failure to act, is flawed because she applies a general ruleCno
judicial immunity from criminal liabilityCto a specific situation to which it
does not applyCa suit brought by a private
citizen.  

The
broadest rule that controls our decision was announced in Pruitt v. Turner
in a dissenting opinion approved by the Texas Supreme Court.  See Pruitt v. Turner, 336 S.W.2d 440,
444 (Tex. Civ. App.CWaco
1960) (Wilson, J., dissenting), rev=d 342 S.W.2d 422 (Tex. 1961) (approving Justice Wilson=s
dissenting opinion).  There, the dissent
announced the guiding rule:

It was a settled principle at the very foundation of
well‑ordered jurisprudence that every judge, whether of a higher or lower
court, in the exercise of the jurisdiction, conferred on him by law, had
the right to decide according to his own free and unembarrassed convictions,
uninfluenced by any apprehension of private prosecution.

Pruitt, 336
S.W.2d at 444 (Wilson, J., dissenting) (underlining added).

For this case, the key point in this quote is that the judge
is free from private prosecution. 
Therefore, in Pruitt, a litigant could not sue the judge for
failing to empanel a jury in a case.  See Turner v. Pruitt, 342 S.W.2d 422, 423 (Tex. 1961). 
That is a mandamusable act, not subject to
private suit.  See id.  This same concept adheres when criminal acts
are alleged.  So, a judge accused of
conspiring with others to issue an injunction in violation of a plaintiff=s civil rights cannot be sued in a
civil rights action; however, the private individuals who allegedly conspired
with the judgeCand who were not engaged in a judicial
function and merely acted as private citizensCcould be sued in a civil rights
action by the individuals.  See Dennis
v. Sparks, 449 U.S. 24, 26B29, 101 S. Ct. 183, 185B87, 66 L. Ed.2d 185 (1980).  The judge, though immune from private suit,
is not immune from criminal prosecution by a state or federal agency.  See Dennis,
449 U.S. at 27B31, 101 S. Ct. at 186B88.  Applying the rule here, the trial judge belowCand the court-appointed psychiatrists
who proved that they were functioning as an arm of the courtCare immune from private prosecution
by a private citizen.  However, if they
violated a criminal law, they are not immune from criminal prosecution by the
government.  








Some cases using the functional approach have held that
certain administrative functions of judges are not part of the judicial
function and therefore are outside the scope of judicial immunity.  See, e.g., Forrester v. White,
484 U.S. 219, 108 S. Ct. 538, 98 L. Ed.2d 555 (1988) (holding judge not able to
invoke judicial immunity in '1983 damages action against him for employment decision made
in the exercise of his administrative functions). However, the case before us
today does not involve nonjudicial, administrative
functions, and cases such as Forrester only reinforce the principle that
judges or those whom they appoint are entitled to absolute immunity for alleged
acts and omissions during the performance of functions intimately associated
with the judicial process.  See id.,
484 U.S. at 224B26, 108 S. Ct. at 542B43. 


Common law derived immunity might be unavailable if a statute
provided Barbara with a statutory claim for damages against the Cox Estate and
Baylor.  We have not foundCand Barbara has not cited us toCany authority holding that section
261.101of the Texas Family Code or any other statute provides Barbara with a
statutory damage claim against the Cox Estate and Baylor on the facts of this
case.  In short, even if Cox and Baylor
violated sections 33.008 and 261.101 of the Texas Family Code, Barbara has not
shown that these statutes override the common law immunity to which Cox and
Baylor have shown themselves to be entitled.

3.       Possible
violation of a mandatory duty does not negate derived judicial immunity.

We now turn to the second reason Barbara claims immunity does
not shield the Cox Estate and BaylorCthe duty to report suspected child
abuse is mandatory, not discretionary. In support of this claim, Barbara cites
numerous Aofficial immunity@ cases.  Official immunity cases do not apply to
judicial immunity; judicial immunity and official immunity are two completely
different doctrines. 








Judicial immunity lends immunity for acts taken in a case
before a court.[7]  Judicial immunity is an absolute immunity
from private action for all actsCgood or badCin a case.  It applies to judges and those appointed by
judges to perform judicial, discretionary functions.  For those appointed by a court to assist it,
immunity attaches only if they are performing judicial, discretionary
tasks.  

Official immunity applies to government officials. Official
immunity is not absolute; the actor must act in good faith, and the act must be
discretionary.[8]  








Courts also use different analyses to determine if the judge
or government official is immune from suit. 
As we explained earlier, when judicial immunity is claimed, Texas courts
use the functional approach to decide if immunity attaches.  That approach looks to the task the
individual is assigned by the court.  If
the task is intimately involved with the judicial process and involves judicial
decision-making and discretion, immunity attaches.  We do not parse the individual actsCinterviewing the individuals,
deciding that an issue of abuse exists and allegedly failing to report
suspected abuseCwithin the general assignment and scrutinize them for proper
behavior.  Any general assignment or
function intimately related to the judicial process is protected; any part of
the general assignment, or function, that is part and parcel of the function is
protected.  We do not inquire about
reasonableness; we do not inquire about
good faith.  We do not ask whether the
alleged wrongful conduct was discretionary. 
See Forrester, 484 U.S. at 224, 108 S. Ct. at 542 (stating
that Aunder
[the functional] approach, we examine the nature of the functions with which a
particular official or class of officials has been lawfully entrusted, and we
seek to evaluate the effect that exposure to particular forms of liability
would likely have on the appropriate exercise of those functions@);
Halsey, 87 S.W.3d at 555 (stating that Aas applied in Texas, the functional
approach in applying derived judicial immunity focuses on the nature of the
function performed, not the identity of the actor, and considers whether the
court officer=s conduct is like that of the
delegating or appointing judge@);  Delcourt,
919 S.W.2d at 782 (A[u]nder the functional approach,
courts determine whether the activities of the party seeking immunity are
intimately associated with the judicial process . . . [i]n
other words, a party is entitled to absolute immunity when the party is acting
as an integral part of the judicial system or an >arm of the court=@). 
As we said before, once an individual is cloaked with derived judicial
immunity because of a function being performed for a court, all the actions
intimately connected with that processCwhether good or bad, honest or
dishonest, well-intentioned or not, criminal or notCare cloaked with immunity.  

The inquiry in official immunity cases is quite
different.  There the focus is not the
actor=s general function, but the specific
act in question.  It delves into the
specific act at issue and asks if it was discretionary.  It looks at the alleged wrongful conduct and
asks if the actor was well-intentioned and acted in good faith.  See City of Lancaster v. Chambers, 883
S.W.2d 650, 653 (Tex. 1994).  

Although
at some point in the inquiry both types of immunity ask if the act (for
official immunity) or function (for judicial immunity) was discretionary, or
involved discretion, the similarity stops there.  Thus, official immunity cases do not apply to
a judicial immunity case because they employ the wrong analysis.  Therefore, we overrule issues three, four,
and six, all based on an assumption that official immunity cases apply to
derived judicial immunity.  

B.      Does
the statutory immunity under section 261.106 of the Texas Family Code override
the common-law derived judicial immunity?         








In her seventh issue Barbara argues that the existence of
statutory immunity under section 261.106 of the Texas Family Code shows that
the Legislature intended to abolish common-law derived judicial immunity and
replace it with this statutory immunity. 
See Tex.
Fam Code ' 261.106.  We disagree. 
Section 261.106 grants immunity from civil or criminal liability to a person
acting in good faith who reports or assists in the investigation of a report of
alleged child abuse or neglect or who testifies or otherwise participates in a
judicial proceeding arising from a report, petition, or investigation of
alleged child abuse or neglect.  Tex. Fam Code '
261.106(a).  This statutory immunity also
extends to an authorized volunteer of the Department of Protective and
Regulatory Services or a law enforcement officer who participates at the request
of that department in an investigation of alleged or suspected child abuse or
neglect or in an action
arising from an investigation if the person was acting in good faith and in the
scope of the person=s responsibilities.  Tex. Fam
Code '
261.106(b).  

In construing a statute, our objective is to determine and
give effect to the Legislature's intent. 
See Nat=l Liab. & Fire Ins. Co. v. Allen, 15 S.W.3d 525, 527 (Tex.
2000).  If possible, we must ascertain
that intent from the language the Legislature used in the statute and not look
to extraneous matters for an intent the statute does not state.  Id. 
If the meaning of the statutory language is unambiguous, we adopt the
interpretation supported by the plain meaning of the provision's words.  St. Luke=s Episcopal Hosp. v. Agbor, 952 S.W.2d 503, 505 (Tex.1997). 
We must not engage in forced or strained construction;  instead, we must yield to the plain sense of
the words the Legislature chose.  See
id.








Barbara cites no authorities directly on point.  She does cite a Texas Supreme Court case in
which the court held that the Medical Liability and Insurance Improvement Act
intended to abolish the common-law discovery rule regarding the claims to which
it applies.  See Morrison v. Chan,
699 S.W.2d 205, 208 (Tex. 1985).  We find
that the language of section 261.106 of the Texas Family Code unambiguously
provides statutory immunity for certain persons who assist in the investigation
of a report of alleged child abuse or neglect or who participate in a judicial
proceeding arising from a report, petition or investigation of child abuse;
however, we find no intent in the unambiguous language of this statute to
abolish common-law derived judicial immunity. See
Tex. Fam Code '
261.106.   We conclude that the statutory privilege
granted by section 261.106 serves a different purpose than derived judicial
immunity and that the Legislature, by enacting this statute, did not intend to
abolish derived judicial immunity.  See
Laub v. Pesikoff, 979
S.W.2d 686, 690 n.2. (Tex. App.CHouston [1st Dist.] 1998, pet.
denied) (holding that section 261.106 of the Texas Family Code does not abolish
or modify the absolute, common-law, judicial-communications privilege because
the statute serves different purposes). 
Accordingly, we overrule Barbara=s seventh issue.

                                                            V. 
Conclusion

The
Cox Estate and Baylor conclusively proved facts showing their entitlement to
derived judicial immunity under Texas common law, and Barbara did not raise a
genuine issue regarding any of the facts material to this defense.  The
focus of our derived-judicial-immunity analysis is on the nature of the
function performed by Dr. Cox and Baylor, not on the alleged criminality of a
specific act or omission allegedly committed while performing that function.  The
existence of a duty to report suspected child abuse under section 261.101(b) of
the Texas Family Code and criminal sanctions for the knowing violation of this
duty do not prevent Dr. Cox and Baylor from asserting derived-judicial-immunity
from civil liability in this case.  We conclude that the statutory immunity provided by
section 261.106 does not abolish common-law derived judicial immunity.  Under the functional approach, we hold that the trial
court correctly granted summary judgment based on derived judicial
immunity.  See Halsey, 87 S.W.3d
at 554B57; Delcourt, 919
S.W.2d at 781B83.  Accordingly, we overrule Barbara=s first global issue challenging this judgment and all
sub-issues.

 

 

 

/s/        Wanda
McKee Fowler

Justice

 

 

Judgment rendered and Opinion filed
August 28, 2003.

Panel consists of Justices Yates,
Hudson, and Fowler.











[1]  They were not
the only defendants, but they are the only defendants relevant to this appeal.





[2]  See Delcourt v. Silverman, 919 S.W.2d 777, 781B83 (Tex. App.CHouston
[14th Dist.] 1996, writ denied). 





[3]  See Dallas
County v. Halsey, 87 S.W.3d 552, 554 (Tex. 2002). 





[4]  Barbara
alleged that this failure to act violated sections 33.008 and 261.101 of the
Texas Family Code.





[5]  Barbara
separates her argument into two parts, first that their failure to report was
not a judicial act and second that Cox and Baylor do not receive immunity
simply because they are Acourt appointed.@ We
answer both of these claims in our discussion below.





[6]  We have no
affidavit from Dr. Cox because he died between the time of the events in this
case and the lawsuit.  





[7]  Typically it
is described as immunity in cases over which the court has jurisdiction.  But, if a case was filed in a court, even if
the court ultimately decided it had no jurisdiction over a case, judicial
immunity would protect the judge=s
actions before the case was dismissed.  





[8]  Obviously, a
judge qualifies as a governmental official, but judges need not resort to
official immunity because judicial immunity is broader.